DAVIS, Circuit Judge.
 

 Massachusetts Mutual Life Insurance Co. (Mutual) appeals from a decision of the United States Claims Court, Margolis,
 
 J,
 
 (5 Cl.Ct. 581 (1984)) granting the Government’s motion for summary judgment. At issue is the proper treatment of a particular bad debt loss under the special provisions relating to the taxation of life insurance companies in the Internal Revenue Code of 1954, as amended, 26 U.S.C. §§ 801-820 (1982).
 
 [1]
 
 We affirm.
 

 I.
 

 In 1950, Mutual loaned $2,500,000 to Texas Consolidated Oils (TCO) as part of a $15,100,000 loan package. Of that sum, the Reconstruction Finance Corporation lent $11,100,000 and John Hancock Mutual Life Insurance Co. lent the remaining $1,500,000. TCO signed separate promissory notes with each creditor; each of the notes, however, was secured by a single deed of trust covering almost all of TCO’s gas and oil properties. Under the terms of each note, a default as to one creditor was a default as to all.
 

 On April 1, 1960, TCO was unable to meet its obligations. The creditors agreed to sell TCO’s property in an effort to recover the amounts due. At this point, TCO owed Mutual $1,976,461.41. From the sale, Mutual received $408,633.18. At that time, Mutual estimated that it might yet recover $25,426.00 and determined the balance, $1,542,405.23, to be worthless debt.
 

 In 1961 and 1963, Mutual recovered a total of $18,245.13. Late in 1963, Mutual concluded that it would never recover the remaining balance,
 
 i.e.,
 
 the $25,426 which it assumed it could recover less the $18,-245.13 which it subsequently collected. Mutual therefore charged off $7,180.87 as worthless debt in 1963.
 

 The Internal Revenue Service (IRS) audited Mutual’s returns for the tax years 1958-1970. The IRS assessed deficiencies in various amounts for several of the years, including 1961 and 1963. One of the items in contention between Mutual and the IRS was the proper treatment of the TCO bad debt loss written off in those years. Mutual paid the deficiencies and filed claims for refunds, which were, in all respects now relevant, denied.
 

 Mutual then filed a timely petition in the United States Court of Claims seeking to recover the taxes paid (plus interest) relating
 
 inter alia
 
 to the TCO bad debt loss. Mutual argued alternatively that the bad debt loss was deductible: (1) as an investment expense under § 804(c)(1); (2) as an expense attributable to a “trade or business (other than an insurance business)” under § 804(e)(5); or (3) as an expense incurred by a partnership of which Mutual was a partner, also under § 804(c)(5). The parties filed cross-motions for summary judgment. The Claims Court (which succeeded to the case on the demise of the Court of Claims) granted the Government’s motion, and denied Mutual’s. Mutual appeals from this decision only to the extent the Claims Court held the bad debt not deductible under the language relating to partnerships in § 804(c)(5).
 

 II.
 

 Section 802(a)(1) imposes a tax on “life insurance taxable income.” The complicated formula for determining this amount involves a three-phase computation set
 
 *668
 
 forth in § 802(b). Phase I consists of either the insurance company’s taxable investment income (computed under rules contained in § 804) or its gain from operations (computed as prescribed in § 809), whichever is smaller. If gain from operations is smaller, the insurance company pays a tax on that amount. If gain from operations is larger, then Phase II consists of one-half of the difference between this amount and taxable investment income. Phase III consists of that portion of the remaining one-half of the excess which the insurance company distributes to its stockholders. Various details of the insurance company taxation scheme have been considered in other cases and authorities.
 
 United States v. Atlas Ins. Co.,
 
 381 U.S. 233, 85 S.Ct. 1379, 14 L.Ed.2d 358 (1965);
 
 American National Ins. Co. v. United States,
 
 690 F.2d 878 (Ct.Cl.1982); 8 J. Mertens,
 
 The Law of Federal Income Taxation,
 
 § 44A.01 (1978).
 

 The question in this case is not
 
 whether
 
 the bad debt loss is deductible, but rather
 
 where
 
 in the phase I calculation it should be deducted. This is more than an academic problem. Mutual alleges that in the tax years in question, it was taxed only on its taxable investment income; accordingly, a loss deduction from its gain from operations would not lower its tax liability. Moreover, the loss deduction may be crucial if the taxable investment income and gain from operation are sufficiently close that the deduction determines which is greater.
 

 Mutual argues that the deduction should be allowed under § 804 in the calculation of taxable investment income. Taxable investment income is composed of the insurance company’s investment yield plus its net capital gains less certain deductions. § 804(a)(2). Investment yield is, in turn, gross investment income less certain deductions. Gross investment income, as defined in § 804(b), includes:
 

 (1)
 
 Interest,
 
 etc.—The gross amount of income from—
 

 (A) interest, dividends, rents and royalties,
 

 * * * $ $ $
 

 (2)
 
 Short term capital
 
 gain____
 

 (3)
 
 Trade or business
 
 income.—The gross income from any trade or business (other than an insurance business) carried on by the life insurance company, or by a partnership of which the life insurance company is a partner. In computing gross income under this paragraph, there shall be excluded any item described in paragraph (1).
 

 The corresponding deductions listed in § 804(c) which, when subtracted from gross investment income result in investment yield, are:
 

 (1)
 
 Investment
 
 expenses.—Investment expenses for the taxable year.
 

 s¡s H* # * sfc
 

 [ (2)-(4)
 
 (Real estate expenses, Depreciation
 
 and
 
 Depletion
 
 ]
 

 (5)
 
 Trade or business
 
 deductions.—The deductions allowed by this subtitle [A— Income Taxes] (without regard to this part) which are attributable to any trade or business (other than an insurance business) carried on by the life insurance company, or by a partnership of which the life insurance company is a partner. [This paragraph is subject to certain exceptions not pertinent here.]
 

 Mutual’s contention is: it was a partner in a partnership created to arrange the loan to TCO;
 
 [2]
 
 that the partnership itself was not engaged in the insurance business; and the deduction here is therefore allowed under the express language of § 804(c)(5) in Mutual’s calculation of investment yield.
 

 The Government argues, on the other hand, that the bad debt loss is not deductible under any provision of § 804(c). Rath
 
 *669
 
 er, the Government says that the deduction is allowable only in the computation of gain from operations in § 809. Gain (or loss) from operations is the amount by which the company’s revenue from all sources (including investments) exceeds (or falls short of) certain deductions listed in § 809(d). The Government’s position is that the appropriate place to deduct bad debt losses is under § 809(d)(ll):
 

 For purposes of subsections (b)(1) and (2) [gain and loss from operations], there shall be allowed the following deductions:
 

 * * * * * *
 

 (11)
 
 Other
 
 deductions.—Subject to the modifications provided by subsection (e), all other deductions allowed under this subtitle for purposes of computing taxable income to the extent not allowed as deductions in computing investment yield.
 

 Section 166, which is in the same subtitle as § 809, allows a deduction for bad debts. The last portion of § 809(d)(ll) confirms that § 804(c) deductions are not to be included in § 809(d) calculations—for that reason, both the Government and Mutual cannot be right.
 

 III.
 

 Mutual’s sole argument to us is that it is entitled to the deduction under § 804(c)(5) because it lent the money to TOO as a partner in a partnership (which we assume for the purposes of this appeal to have been the case), and that this partnership was not itself engaged in the insurance business.
 

 This reasoning seems to have a certain literal appeal, but must fail when considered in the context of § 804 as a whole. The Claims Court definitely ruled that Mutual could not take the deductions as attributable to a “trade or business (other than insurance business)” when viewing Mutual’s making of the loan as a solo venture. Mutual has not appealed from this aspect of the decision and we must accept it as given. It would be surprising if Congress had intended to deny the deduction if one insurance company made the loan, but to grant the deduction solely because three companies made the loan in concert. We know of no reason why Congress should make that distinction, and Mutual gives us none. The absence of a ground to make the distinction strongly suggests that none was desired.
 

 In addition, the statutory text, closely read, does not support the distinction. Mutual hinges its argument on the claim that the partnership which entered into the TCO deal is an entity separate from any of the individual partners. Mutual must do so if it is to separate the partnership’s business from its own insurance business. This characteristic of partnerships, while necessary to Mutual’s case in this aspect, proves to be its achilles heel in another. Under the specific terms of § 804(c)(5), the deduction must be “attributable” to the partnership. Any deductible loss suffered by Mutual “attributable” to the separate partnership, however, is attributable to Mutual’s investment in its partnership share. The bad debt is not “attributable” to Mutual's operation of a non-insurance trade or business in partnership form, but rather was incurred by the partnership as a separate entity.
 
 [3]
 

 The legislative history of § 804(c)(5) furthers this reading. Congress passed the precursor to § 804(c)(5) as § 803(e)(6) of the code in the Life Insurance Company Tax
 
 *670
 
 Act of 1955 (the 1955 Act)
 
 [4]
 
 Pub.L. No. 84-429, 70 Stat. 36. The Senate Report states specifically the purpose of the new provisions relating to non-insurance trades or businesses:
 

 The gross income of a life insurance company under present law
 
 [i.e.,
 
 prior to the 1955 Act] is defined as interest, dividends and rents. This definition has been changed by expressly including ... (3) income derived from the operation of a noninsurance business____ Normally a life insurance company will only have income from a non-insurance business where it acquires a going business in foreclosing a mortgage. Income earned in this situation is considered to be similar to mortgage interest. In some cases there is uncertainty as to the status of these items under present law.
 

 S.Rep. No. 1571, 84th Cong., 2d Sess.,
 
 reprinted in,
 
 1956 U.S.Code Cong. & Ad. News 2253, 2258. The report later explains § 803(c)(6), now § 804(c)(5): “Paragraph (6) of this subsection allows the deductions attributable to any trade or business, the income from which is included in the life insurance company’s gross investment income by reason of section 803(b)(2) [now § 804(b)(3)].”
 
 Id.,
 
 1956 U.S.Code Cong. & Ad.News at 2264. Section 804(c)(5) is, therefore, directed not at losses incurred by the insurance company in the insurance business, but rather at losses incurred by an operational business run by the insurance company.
 
 [5]
 

 The legislative history does not indicate a separate rationale for the partnership languages.
 
 [6]
 
 However, the reasoning of the rest of the provision applies equally to this provision. As in this case, multiple lenders may find themselves in joint possession of an ongoing enterprise. Section 804(c)(5) makes it clear that, despite their joint ownership and “partnership” status (as defined in § 7701(a)(2) of the tax code), they are entitled to the deductions as if they were the sole holders of the property. Thus, had the partnership of which Mutual was putatively a partner decided to foreclose on its loan and operate TCO’s oil and gas properties, it would have been entitled to deduct under § 804(c)(5) its share of all the losses and expenses allowed by subtitle A which were attributable to that business (and which were not deductible under § 804(c)(1)).
 

 
 *671
 
 The IRS regulations construing §§ 804 and 809, which date back to I960,
 
 [7]
 
 support the result that the bad debt loss here is deductible under § 809(d)(11) and not § 804(c)(5). Treas.Reg. § 1.809-6(b) states that “a deduction for specific bad debts shall be allowed [under § 809(d)(11) ] to the extent that such deduction is allowed under section 166 and the regulations thereunder.” As noted
 
 supra,
 
 the loss may not, according to the statute, be deducted under both §§ 804(e)(5) and 809(d)(ll).
 

 The regulations under § 804(c) reach the same result. Treas.Reg. § 1.804-4(b)(6)(i) recognizes that the deductions allowed under § 804(c) correspond to certain items includible in § 804(b)’s calculation of “gross investment income.”
 
 [8]
 
 By virtue of § 804(b)(3), items included in § 804(b)(1)
 
 (“Interest, etc.”)
 
 are not to be included in § 804(b)(3)
 
 (“Trade or business income”).
 
 Therefore, the regulation posits that, because interest is included in gross investment income under § 804(b)(1) and not 804(b)(3), then the corresponding deductions must be deductible, if at all, under § 804(c)(1)
 
 (“Investment expenses”).
 
 Because a bad debt loss is attributable to accrued interest (even in a partnership), the deduction cannot be taken under § 804(c)(5).
 
 Accord,
 
 “Insurance Industry-Wide Examination, Minutes of April 14-18, 1975, Meeting in Atlanta, Ga.,”
 
 reprinted in
 
 3 T. Nash,
 
 Federal Taxation of Life Insurance Companies
 
 at App. 641-42 (1979). Mutual did not appeal that portion of the Claims Court’s decision denying the deduction under § 804(c)(1), and we have no reason to reject the Claims Court’s ruling on that issue.
 

 For these reasons, the decision of the Claims Court, insofar as it has been appealed from, is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . All section references are to this edition of title 26.
 

 [2]
 

 . The term partnership includes, when used in the tax code, "a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on.” § 7701(a)(2). The Government disputes Mutual’s' characterization of the contemporaneous loans as a partnership. We assume,
 
 arguendo,
 
 for the purposes of this appeal that the arrangement fits within the statutory definition.
 

 [3]
 

 . The IRS has adopted essentially this position in Rev.Rul. 75-62, 1975-1 C.B. 188. An insurance company requested advice whether its interest in a partnership organized to develop a residential community is an "other asset” or a real estate interest for purposes of calculating the insurance company’s adjusted reserve rate under § 805(b). The IRS determined that it is an "other asset." Thus, any deductions attributable to this partnership must relate to the company's partnership share, and not to the underlying real estate. The deduction, if otherwise allowable, would be an investment expense
 
 *670
 
 (§ 804(c)(1)) and not a real estate expense (§ 804(c)(2)).
 

 [4]
 

 . Congress further revised the provisions on life insurance companies in the Life Insurance Company Tax Act of 1959, Pub.L. No. 86-69, 73 Stat. 112, and renumbered some of the retained provisions. Congress intended that § 804(c)(5) be "substantially the same as section 803(c)(6) of the 1954 Code” as added by the 1955 Act. S.Rep. No. 219, 86th Cong., 1st Sess. (1959),
 
 reprinted in
 
 1959 U.S.Code Cong. & Ad.News 1575, 1622.
 

 [5]
 

 . Although other portions of the legislative history indicate that a foreclosure is not a necessary predicate to a deduction under § 804(c)(5), they do confirm that the deductions are attributable to businesses run by the insurance company and not to the insurance company’s own business, no matter what its character.
 
 See,
 
 S.Rep. 1571,
 
 supra,
 
 1956 U.S.Code Cong. & Ad. News at 2264; Treas.Reg. § 1.804-4(b)(6)(iii), 26 C.F.R. § 1.804-4(b)(6)(iii) (1984) (a life insurance company which operates a radio station primarily to advertise its services may take deductions under § 804(c)(5) for expenses and losses incurred by the station except to the extent attributable to the advertisement of the company).
 

 [6]
 

 . Prior to 1955, insurance companies were taxed only on their “free investment income”— interest, dividends and rents. Unsatisfied with this formula, the Eighty-Third Congress appointed a committee to study the taxation of insurance companies in depth. This study led to the changes in the 1955 Act, and culminated in the comprehensive 1959 Act. Many of the specific terms and phrases used in the statutes came from this committee, which did not in its report specify its reasons for every item it proposed. Thus, the specific rationale behind the partnership language is not explicit. The committee did, however, propose the trade or business (other than insurance business) deductions because insurance companies which acquire a business through foreclosure should be able to take proper deductions attributable to the operation of those businesses.
 
 Staff Report on Taxation of Life Insurance Companies for Hearings Before a Subcommittee of the Committee on Ways and Means,
 
 49, 83d. Cong., 2d. Sess. (Comm. Print 1954).
 

 [7]
 

 . The regulations were adopted soon after Congress passed the 1959 Act. IRS Regulations promulgated contemporaneously with the statute they interpret are entitled to great weight.
 
 Commissioner v. Portland Cement Co.,
 
 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981).
 

 [8]
 

 .
 
 See
 
 S.Rep. No. 1571,
 
 supra,
 
 1956 U.S.Code Cong. & Ad.News at 2258. (“The deductions
 
 corresponding
 
 to these types of income are allowed.”) (Emphasis added.)