**MINNESOTA POWER AND LIGHT COMPANY, Appellee,**

v.

**The UNITED STATES, Appellant.**

**Appeal No. 85–1757.**

United States Court of Appeals, Federal Circuit.

Jan. 8, 1986.

Michael Roach, Tax Div., Dept. of Justice, Washington, D.C., argued for appellant. With him on brief were Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Jonathan S. Cohen, Washington, D.C.

James W. Littlefield, Hart & Bruner, P.A., Minneapolis, Minn., argued for appellee. With him on brief was Steven Z. Kaplan, Minneapolis, Minn.

Sharon L. King, Pamela B. Strobel and Michael R. Goldfein, Isham, Lincoln & Beale, Chicago, Ill., were on brief for Amicus Curiae.

Before SMITH, NIES and BISSELL, Circuit Judges.

NIES, Circuit Judge.

The United States appeals from the final decision of the Claims Court, reported at 6 Cl.Ct. 558 (1984), which granted Minnesota Power and Light Company a refund of certain highway motor vehicle use taxes imposed by Section 4481 of the Internal Revenue Code. The Claims Court held that the assessment of the tax on taxpayers' vehicles as truck-trailer combinations solely because the trucks were equipped for use with heavy-duty trailers was in conflict with the statute. We reverse.

## I.

Minnesota Power and Light Company (MPLC) is a public utility company engaged in generating, transmitting and distributing electricity and natural gas in northeastern Minnesota. During the tax years in issue, 1973–1976, MPLC owned and operated a fleet of utility trucks for use in construction, maintenance and repair of the utility system. Among the fleet were 49 heavy trucks, the tax status of which is here in issue. At the same time MPLC also owned about 40 heavy-duty trailers. Each of those trucks had an actual unloaded weight in excess of 9,000 pounds and each was equipped with a coupling device, known as a pintle hook, to enable the trucks to tow taxpayer's heavy-duty trailers.

The Internal Revenue Code imposes a highway use tax on certain vehicles under the following statutory scheme. 26 U.S.C. § 4481(a) (1982), provides, in pertinent part:

A tax is hereby imposed on the use of any highway motor vehicle which (together with the semitrailers and trailers *customarily used in connection with highway motor vehicles of the same type* as such highway motor vehicle) has a taxable gross weight of more than 26,000 pounds ... (emphasis added).

No tax is imposed on a semitrailer or trailer as a separate taxable unit. However, trailers may be taxed as part of the weight of a taxable vehicle in some instances.

The term "taxable gross weight" used in § 4481(a) is defined in § 4482(b). The latter section reads in its entirety as follows:

(b) *Taxable gross weight.* For purposes of this subchapter, the term "taxable gross weight" when used with respect to any highway motor vehicle, means the sum of—

(1) the *actual* unloaded weight of—

(A) such highway motor vehicle fully equipped for service, and

(B) the semitrailers and trailers (fully equipped for service) *customarily used in connection with highway motor vehicles of the same type* as such highway motor vehicle, and

(2) the weight of the maximum load *customarily carried* on highway motor vehicles of the same type as such highway motor vehicle and on the semitrailers and trailers referred to in paragraph (1)(B).

Taxable gross weight shall be determined under regulations prescribed by the Secretary (which regulations may include formulas or other methods for determining the taxable gross weight of vehicles by *classes, specifications,* or *otherwise*). [Emphasis added.]

Pursuant to the above authority, the Secretary promulgated the regulations found at 26 C.F.R. § 41.4482(b)–1(d) entitled "Schedule of taxable gross weights for periods after June 30, 1969," which includes a schedule of taxable gross weights based upon vehicle classification.[1] Accord-

---

**1.** A representative portion of the schedule contained in 26 C.F.R. § 41.4482(b)–1(d), reads as follows:

USE TAX SCHEDULE

|  | Taxable Gross Weight (in pounds) |
|---|---|
| 1. Single units: |  |
| (a) 2 axled truck equipped for use as a single unit with actual unloaded weight of 13,000 pounds or more .......................... | 27,000 |

[other weight classes follow]

\* \* \*

3. Truck-trailer combinations:

(p) 2 axled truck with actual unloaded weight of 9,000 pounds or more and less than 12,000 pounds and equipped for use in combinations .......................... 40,000

[other weight classes follow] [Emphasis added.]

ing to the Secretary's interpretation of the schedule, a truck having two axles, which has an actual unloaded weight over 9,000 pounds, and which is "equipped for use in combinations," that is, with heavy-duty trailers, shall be deemed a type of vehicle taxable as a combination.

On its federal highway use tax returns filed for the tax years ended June 30, 1973, through June 30, 1976, MPLC reported its utility trucks in issue as single unit vehicles, i.e., not truck-trailer combinations, and paid the use taxes applicable to that class of vehicles. During a subsequent audit, the IRS ruled that the presence of pintle hooks on the trucks caused those vehicles to be "equipped for use in combinations" with trailers. Accordingly, the IRS reclassified those trucks as "truck-trailer combinations," relying on its regulatory Schedule, and assessed additional highway use taxes against MPLC. MPLC paid the assessments and timely filed claims for refunds which were disallowed. MPLC thereafter filed suit for a refund in the Claims Court.

In overturning the IRS classification of the MPLC vehicles, the Claims Court adopted a two-prong approach to the determination of the federal highway use tax. The court held that, for administrative convenience, IRS could use an "equipped for use" test for an initial imposition and collection of the tax. The court went on to rule, however, that the initial determination could not be dispositive. Per the court, a taxpayer must be allowed under the statute to prove that the particular trucks in dispute were not "customarily used" with trailers. The court further ruled that if MPLC could establish that the subject trucks were not used to haul heavy-duty trailers more than 50% of the time, the IRS's classification must be changed. The court then ordered that a trial be held to determine the quantum of use. Following the decision by the Claims Court, the parties entered into a stipulation that no MPLC truck was used more than 50% of the time with a heavy-duty trailer.[2] The Claims Court then entered judgment in favor of MPLC in the amount of $24,599.15 plus interest.

## II.

The above brief summary of the Claims Court decision does not reflect the depth of the court's analysis. The opinion reviews Treasury rulings, internal agency memoranda, legislative history, and other court decisions in enlightening detail, and this court acknowledges the court's effort with appreciation. However, the pivotal issue here is a question of law, a matter of statutory interpretation, on which this court must exercise its independent judgment.[3] Having reviewed all of the arguments and the record in support thereof, this court concludes that the Highway Use Tax was lawfully imposed on MPLC vehicles as truck-trailer combinations.

In essence, the Claims Court held that the interpretation given by IRS to its regulation, that is, the Schedule of taxable gross weights, conflicted with the statute. Therefore, the Claims Court nullified IRS's interpretation[4] and gave the regulatory Schedule a different interpretation in har-

---

**2.** The parties stipulated as follows:

> During the years in issue, none of plaintiff's 49 trucks having an unloaded weight of over 9,000 pounds were used more than fifty percent of the time with plaintiff's trailers having two or more axles or one axle with a gross weight of 6,000 pounds or more.

**3.** A conflict exists in the circuits on the question before us. In *Northern Illinois Gas Co. v. United States,* 743 F.2d 539 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985); *Northern States Power Co. v. United States,* 663 F.2d 55 (8th Cir.1981), *cert. denied,*

456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982) and *Consolidated Edison Co. of New York v. United States,* 85–1 USTC ¶ 16,431 (S.D.N.Y. 1985), the courts upheld the government's position. In *Pacific Gas and Electric Co. v. United States,* 664 F.2d 1133 (9th Cir.1981), the court rejected the "equipped for use" test. The Claims Court essentially is in accord with the 9th Circuit's position.

**4.** The IRS interpretation is set forth in Rev.Pub. 76–294, 1976, 2 Cum.Bull. 364,. The Claims Court invalidated this ruling.

mony with the Claims Court's interpretation of the statute.

The statutory language which must be construed is that found in §§ 4481(a) and 4482(b)(1), specifically the words "customarily used." When the statute speaks of a tax on a vehicle based on its weight "together with the semi-trailers and trailers *customarily used* in connection with highway motor vehicles of the same type," what meaning must be given to the words trailers "customarily used" with the trucks? More specifically, is the "equipped for use" class of trucks (without inquiry into actual use of the taxpayer's type of trucks) consistent with the statute? For reasons which follow, we hold that the "equipped for use" test does not violate the statute.

### III.

#### A.

The Highway Revenue Act of 1956, ch. 462, 70 Stat. 374, 387, *et seq.*, was designed to raise additional revenue in order to finance federal aid for construction of interstate highways. H.R.Rep. No. 2022, 84th Cong., 2d Sess. at 37–38 (1956–2 Cum.Bull. 1285, 1286–1287); S.Rep. No. 2054, 84th Cong., 2d Sess. at 1–2 (1956–2 Cum.Bull. 1308–1309), U.S.Code Cong. & Admin.News 1956, 2822. To further this purpose that Act increased certain taxes associated with highway motor vehicles,[5] and added § 4481(a) to the Code, imposing the new highway use tax which is at issue in this case.

Although designated a use tax, the statute imposes the tax on types of vehicles classed by weight, rather than by quantum of usage on the highways. In determining the "taxable gross weight" of a vehicle, the statute directs that the calculation begin with the *actual* unloaded weight of the vehicle to which are to be added the weight of the maximum load which the vehicle can carry, as well as the weight of a semitrailer or trailer and its maximum load, as appropriate, that is, if the weight is "customarily carried" or the trailer is "customarily used" therewith.

No question is raised here with respect to the inclusion of a maximum hypothetical load weight for the truck itself in the "taxable gross weight" of taxpayers' trucks. The challenge is to the inclusion of the weight of a trailer and its load.

Section 4482(b), above quoted, confers upon the Secretary of the Treasury broad authority to promulgate regulations establishing classifications of vehicles and to assign to such classes a weight value that would apply to all vehicles in each class. As the Supreme Court has made clear, the interpretation of a statute by the agency charged with its administration is entitled to deference. The agency's regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes, and should not be overruled except for weighty reasons." *Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 845, 55 L.Ed.2d 1 (1978) (citations omitted); *see also Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981); *Thomas International v. United States*, 773 F.2d 300, 303 (Fed.Cir.1985); *Greenacre Foundation v. United States*, 762 F.2d 965, 967 (Fed.Cir.1985); *Massachusetts Mutual Life Ins. Co. v. United States*, 761 F.2d 666, 671 n. 7 (Fed.Cir.1985); *Rowe v. United States*, 655 F.2d 1065, 1067 (Ct.Cl. 1981); *cf. United States v. Cartwright*, 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973) (deference to Treasury regulations, while fundamental, only sets "the framework for judicial analysis; it does not displace it").[6] This is particularly true where the agency has given its inter-

---

5. Taxes so increased included the special fuels tax (Code Section 4041), as well as Automotive Manufacturers Excise taxes, including taxes on highway motor vehicles (Code Section 4061), tires (Code Section 4071) and gasoline (Code Section 4081).

6. In this case, we need not separately address the alleged unreasonableness of the regulations. The basis for MPLC's argument directed to unreasonableness is the same as its argument that the regulations, as applied by the Secretary, are invalid.

pretation in connection with legislative regulations, such as those before us. *Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977). *See generally* K. Davis, *Administrative Law Treatise*, § 7.8 (2d ed. 1979).

Both the statutory language and the legislative history of the 1956 Highway Revenue Act are clear that the tax is to be made dependent upon classification, not upon actual usage of a particular truck which is subject to tax. Specifically with respect to inclusion of trailer weights, the Report of the Committee on Finance, S.Rep. No. 2054, *supra* at 8 (1956–2 Cum.Bull. at 1313), U.S.Code Cong. & Admin.News 1956 at 2857 states in this regard:

> As indicated above, this tax is imposed on the basis of the "taxable gross weight" of a highway motor vehicle. "Taxable gross weight" generally is the unloaded weight of the highway motor vehicle fully equipped for service together with any semitrailer or trailer equipped for service customarily used in connection with motor vehicles of the type in question whether or not so used in connection with a particular vehicle with respect to which the tax is imposed.[7]

*Accord,* H.R.Rep. No. 2022, *supra* at 43 (1956–2 Cum.Bull. at 1290). The inquiry is to a class of trucks, not individual trucks.

To this point the parties are in agreement. The difference arises over whether a class based simply upon the truck being "equipped for use" with a trailer conflicts with the "customarily used" limitation in the statute.

In essence, the Claims Court's position, as urged here by the taxpayer, is that the statute requires a class to be based on a factual determination that a particular type of truck is "customarily used" with trailers. Taxpayer further asserts that the stipulation concerning its limited use of its truck fleet with trailers negates the possibility of a finding of actual customary use of that type of truck in a truck-trailer combination. It also represents that MPLC's usage is typical of the entire utility industry.

The government, on the other hand, argues that the interpretation of "customarily used" adopted by the Claims Court fails to recognize the broad power given to the Secretary to fix a class by specification or design characteristics, that is, on the basis of how a truck is equipped to be used. The sole purpose of a pintle hook is to tow trailers. Thus, per the government, the presence of a pintle hook on a truck which admittedly gives the truck the *capacity* to tow a heavy-duty trailer is a proper and reasonable class within the "customarily used" limitation. No inquiry into the actual use of any type of truck is necessary to satisfy the statute, in view of the Secretary's authority to classify by criteria other than actual usage.

### B.

The regulatory pattern adopted by the Secretary throughout the weight schedule is based on *capacity* of vehicles. Only the starting point for determining "taxable gross weight" involves the *actual* weight of a type of vehicle. The actual weight of such vehicle is then increased by hypotheticals.

A challenge to the inclusion of the hypothetical weight of a maximum load on a truck was made in *North American Van Lines, Inc. v. United States*, 169 F.Supp. 252 (Ct.Cl.), *cert. denied*, 359 U.S. 1011, 79 S.Ct. 1148, 3 L.Ed.2d 1036 (1959) on the ground that determining the tax by *capacity* of the vehicle violated the "customarily carried" limitation in the statute. Per the taxpayer, its trucks were not a type which "customarily carried" the maximum load. In dismissing the suit for refund, the Court

---

7. The Senate Report goes on to state (*ibid.*): The term "taxable gross weight" also includes the weight of the maximum load customarily carried by vehicles of the type in question (and on the semitrailers or trailers) whether or not a particular vehicle actually carries a maximum load of this size. In practice it is anticipated that the Treasury Department will develop formulas or classifications for determining the weight of different types of trucks and buses for the purposes of this tax.

of Claims endorsed the Secretary's establishment of classes "based on capacities of equipment." *Id.* at 256. While the precise words before us were not being construed, the issue here is so similar that we would feel constrained by the precedential effect of that decision even if we were not in agreement with it. However, we are unpersuaded that the class established by the Secretary solely on the basis of an "equipped for use" test necessarily conflicts with the statute. The "customarily used" language is followed directly by the Secretary's authorization to determine weight by various methods, such as, by specifications. The reliance by the Secretary on a design feature which gives trucks of a certain weight the *capacity* to tow heavy-duty trailers cannot be held an irrational interpretation of the "customarily used" provision in the statute, given the express authorization to fix classes by specification and the logical relationship between trucks equipped with pintle hooks and trailers. We do not read the "customarily used" provision as overriding the authority to classify by specification. Rather, the two provisions in § 4482(b) can be read as *mutually* dependent.

In *Northern Illinois Gas Co. v. United States,* 743 F.2d 539, 542 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985), the Seventh Circuit put forth the following analysis, which expresses our view as well:

> We find that the language of sections 4481 and 4482 does not preclude taxation of the appellant's trucks as truck-trailer combinations. The "customarily used" language on which the appellant relies must be read in combination with the language in section 4482(b), which authorizes the Secretary to develop "formulas and other methods" for determining the taxable gross weight of vehicles. Because the "customarily used" requirement is integral to the determination of taxable gross weight, we read section 4482(b) as permitting the Secretary to develop a short-hand method for determining whether a certain type of vehicle is customarily used in combination with

heavy trailers. Thus, we reject the appellant's argument that sections 4481 and 4482 require the IRS to tax a particular vehicle as though it were customarily used with a heavy trailer only if it first finds that that type of vehicle is in fact customarily used with heavy trailers.

We agree that the "customarily used" language, like the "customarily carried" language considered in *North American Van Lines,* can be interpreted harmoniously with the Secretary's determination to use design criteria directed to capability of a vehicle as a valid basis for a taxable class. No more is necessary to uphold the statutory interpretation by the Secretary. *Accord, Northern Illinois Gas Co., supra; Northern States Power Co. v. United States,* 663 F.2d 55 (8th Cir.1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982); and *Consolidated Edison Co. of New York v. United States,* 85–1 USTC ¶ 16,431 (S.D.N.Y.1985). That the taxpayer's interpretation of the statute is also reasonable is irrelevant. *United States v. Correll,* 389 U.S. 299, 306–07, 88 S.Ct. 445, 449–50, 19 L.Ed.2d 537 (1967); *Consumer Products Division, SCM Corp. v. Silver Reed America,* 753 F.2d 1033, 1039 (Fed.Cir.1985).

Finally, we do not agree with the Claims Court that the Secretary has created an irrebuttable presumption of fact which must be struck down as a matter of due process under *Heiner v. Donnan,* 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932). The regulations in question here do not conclusively presume *the fact* that the taxpayer's trucks are used with trailers. Because of capacity, MPLC's trucks are placed into the combination class which has a certain "taxable gross weight." If the classification system is proper, the tax is validly imposed. No conclusive presumption of facts is involved. *Accord, Atlas Transportation Company v. United States,* 263 F.2d 573, 576–77 (3rd Cir.), *cert. denied,* 360 U.S. 918, 79 S.Ct. 1437, 3 L.Ed.2d 1534 (1959); *see also Shanahan v. United States,* 447 F.2d 1082, 1084 (10th Cir.1971).

### C.

In reaching the conclusion that the Secretary's interpretation is harmonious with the statute, we have taken into consideration taxpayer's arguments with respect to (1) the effect of the amendment of the statute in 1982 and (2) the Secretary's asserted change of interpretation. While we did not find either argument persuasive, each does warrant some discussion.

The Highway Revenue Act of 1982 added the following language by a new subsection, § 4482(c)(5):

> (5) CUSTOMARY USE. A semitrailer or trailer shall be treated as customarily used in connection with a highway motor vehicle if such vehicle is equipped to tow such semitrailer or trailer.

MPLC argues that since the amendment operates prospectively, it must be considered a change in the law. The government argues that the amendment is merely a clarification. The legislative history appears to us to favor the government, particularly in view of the conflict in the circuits which existed at the time it was enacted.[8] In any event, it is supportive of our conclusion that the "customarily used" language can be read harmoniously with an equipped for use classification.

The asserted change in official position is not unequivocally established. The facts are detailed in the Claims Court decision, and we see no need to repeat them here. Assuming it were true that the change occurred, the question remains whether the later interpretation violates the statute. In *Dickman v. Commissioner of Internal Revenue*, 465 U.S. 330, 343, 104 S.Ct. 1086, 1094, 79 L.Ed.2d 343 (1984), the Supreme Court held:

> Even accepting the notion that the Commissioner's present position represents a departure from prior administrative practice, which is by no means certain, it is well established that the Commissioner may change an earlier interpretation of the law, even if such a change is made retroactive in effect. This rule applies even though a taxpayer

may have relied to his detriment upon the Commissioner's prior position. The Commissioner is under no duty to assert a particular position as soon as the statute authorizes such an interpretation. Accordingly, petitioners' "taxpayer reliance" argument is unavailing. [Footnotes and citations omitted.]

We believe our decision here is in accord with the Supreme Court's guidelines. *Accord, Northern Illinois Gas Co.*, 743 F.2d at 542 n. 5.

### III.

Having considered the Secretary's interpretation vis-a-vis the statutory framework, we conclude that the Claims Court erred in holding the equipped for use regulation, as interpreted by the Secretary, invalid. Accordingly, the judgment of the Claims Court is *reversed*.

REVERSED.