**DOW CORNING
CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 255–87T.

United States Claims Court.

July 3, 1990.

Raymond J. Wiacek, Washington, D.C., attorney of record for plaintiff. Karl Kellar and Jones, Day, Reavis & Pogue, Washington, D.C., of counsel.

Ellen C. Specker, with whom was Asst. Atty. Gen. Shirley D. Peterson and Mildred Seidman, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge:

This income tax refund claim is before the court on cross-motions for summary judgment. The facts have been stipulated, there is no genuine issue as to any material fact, and disposition by summary judgment is appropriate. For the reasons that follow, defendant is entitled to prevail.

### I.

The years at suit antedate the Tax Reform Act of 1986, and the refund claims in this case are based on provisions of the Internal Revenue Code (IRC) in effect prior to 1982. Unless otherwise specified, all references are to the Internal Revenue Code of 1954, as amended, codified in 26 U.S.C. §§ 991–97 (1982).

In 1971, the IRC was amended, effective for tax years beginning January 1, 1972, to provide special tax treatment of income from foreign sales through the use of a vehicle known as a Domestic International Sales Corporation (DISC). IRC §§ 991–97. The provisions of the IRC dealing with DISCs were amended in 1975, 1976 and 1982. In 1984, the DISC program, except for interest charge DISCs, was replaced with provisions applicable to Foreign Sales Corporations (FSC), effective for taxable years beginning after December 31, 1984.

The DISC program was enacted to grant tax incentives as a means of placing domestic corporations engaged in export activities in a better position with corporations using foreign subsidiaries. Prior to the enactment of the DISC provisions, domestic corporations were taxed on their foreign earnings regardless of whether those earnings were kept abroad or brought back into the United States. Corporations using foreign subsidiaries, however, generally were taxed only on their foreign earnings when they were repatriated. For a discussion of the DISC statutory scheme see *Thomas International Ltd. v. United States*, 6 Cl.Ct. 414, 416–17 (1984), *rev'd*, 773 F.2d 300 (Fed.Cir.1985), *cert. denied*, 475 U.S. 1045, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986); *Caterpillar Tractor Co. v. United States*, 589 F.2d 1040, 218 Ct.Cl. 517 (1978).

If a corporation qualifies as a DISC, it is entitled to certain income tax benefits. The technique employed was a deferral of federal tax on income derived from exports. Under the statute, a domestic company could organize a DISC as a "shell" corporation whose sole function would be its use as an accounting device to measure the amount of export earnings subject to tax deferral. The DISC itself is not subject to tax. IRC § 991. Instead, certain items of DISC taxable income (including, most importantly, a specified percentage of sales income) are taxed currently to its shareholders as a constructive dividend, regardless of whether such income is actually distributed. IRC § 995. The remainder of the DISC's current taxable income (called "accumulated DISC income") is not taxable to its shareholders until it is distributed or deemed distributed to the shareholders, the shareholders dispose of their stock in the DISC, or the DISC loses its special status. IRC §§ 995(b) and (c). Thus, the primary benefit of conducting transactions through a DISC is the deferral of federal income tax on a portion of the profit realized.

In this case, plaintiff contends that the Treasury Regulations applicable to the calculation of the amount of export income attributable to a DISC and its related supplier are invalid because contrary to the statutory provisions of the IRC. 26 U.S.C. § 994; 26 C.F.R. § 1.994–2(b)(3); overall profit percentage limitation, and 26 C.F.R. § 1.994–2(c)(2), overall profit percentage. In addition, plaintiff contends the regulations were issued in violation of the Administrative Procedure Act (APA). 5 U.S.C. § 553(c) (1976).

During the tax years at issue, 1976 through 1981, plaintiff, Dow Corning Cor-

poration, a domestic corporation, was the common parent of an affiliated group of corporations within the meaning of the Internal Revenue Code of 1954 as then in effect. Plaintiff employed approximately 3,000 workers at some 14 facilities in the United States, and was engaged in the business of manufacturing and selling approximately 4,000 specialty silicone products, related specialty chemical materials, and certain specialty health care products ranging from contact lens materials to industrial sealants.

During the years at issue, plaintiff owned all the outstanding stock of Dow Corning International Sales Corporation (hereinafter "Sales"), a Delaware corporation which qualified as a "DISC" within the meaning of IRC § 992(a). Sales was organized as a commission DISC under IRC § 994(b). The income of a commission DISC is determined under the transfer pricing methods provided in IRC § 994(a). As a DISC, Sales income could not be included in plaintiff's consolidated federal income tax returns, but its income was reported on Forms 1120–DISC.

Plaintiff timely filed Forms 1120 consolidated federal income tax returns for the years 1976 through 1981 on behalf of itself and its affiliated group. The following table shows the amounts of consolidated taxable income reported, and the income of Sales, as originally reported on Forms 1120–DISC, and in amended Forms 1120–DISC, filed May 14, 1984, and August 2, 1984:

| Taxable Year | DCC Consolidated Taxable Income | Sales Income Original Returns | Sales Income Amended Returns |
|---|---|---|---|
| 1976 | $ 61,861,028 | $3,754,000 | $ 8,891,205 |
| 1977 | $ 71,819,736 | 4,590,000 | 10,264,145 |
| 1978 | 79,553,719 | 5,827,814 | 16,185,369 |
| 1979 | 96,767,778 | 6,105,804 | 19,254,665 |
| 1980 | 100,284,941 | 9,135,493 | 27,612,939 |
| 1981 | 110,667,738 | 9,294,223 | 28,088,292 |

A deferral of tax is available on a percentage of the export sale or commission income allocated to the DISC. IRC § 994(a) sets forth three rules or methods for determining the permissible profits which may be allocated to a DISC as the result of sales of a product acquired from its related supplier—usually, as in this case, the parent corporation. A taxpayer that has a commission DISC is allowed a transfer price or commission that will give the DISC taxable income which does not exceed the greatest of (1) 4 percent of the DISC's qualified export receipts, plus 10 percent of the DISC's export promotion expenses, (2) 50 percent of the combined taxable income of the taxpayer and the DISC attributable to exports, plus .10 percent of the DISC's export promotion expenses, or (3) taxable income based upon the actual sales price subject to the rules of IRC § 482.

This case concerns plaintiff's use of the 50 percent of the combined taxable income method. Plaintiff computed the amounts of Sales' income as shown on its original returns by grouping all sales of qualified export property into two product lines, and then computing the combined taxable income under the 50–50 combined taxable income method of IRC § 994(a)(2), using marginal costing as provided in 26 C.F.R. § 1.994–2(b), as limited by the overall profit percentage limitation (hereinafter "OPPL") of 26 C.F.R. §§ 1.994–2(b)(3).

On May 14, 1984, and August 2, 1984, as a result of the adjustments shown on the DISC 1984 amended returns, plaintiff filed claims for refund (Forms 1120X) seeking refund of overpayments of $1,443,731 for the years 1976 and 1977, and $8,723,247 for the years 1978 through 1981. The claims for refund were based on two distinct is-

sues—grouping, and application of the OPPL to limit the amount of income otherwise attributable to Sales. These claims are independent, were so treated by defendant, and defendant granted some claims for refund based on the grouping issue. The following chart shows plaintiff's federal income tax paid, refunds granted on the grouping issue, and refunds denied on the OPPL claims.

| Taxable Year | Federal Income Tax Paid | Refunds Claimed | Refunds Granted Grouping Issue | Claims Denied OPPL Issue |
|---|---|---|---|---|
| 1976 | $20,176,515} | | $120,455 | $ 842,565 |
| 1977 | 26,142,012} | 1,443,371 | 79,538 | 601,166 |
| 1978 | 24,405,031} | | 80,396 | 1,383,822 |
| 1979 | 26,650,349} | | 81,618 | 1,831,730 |
| 1980 | 26,117,149} | | 185,663 | 2,742,902 |
| 1981 | 25,667,738} | 8,723,247 | 344,905 | 2,774,989 |
| | | 10,186,978 | $892,575 | 10,177,174 |

The amounts of refund claimed and the amounts denied on the OPPL issue are the amounts which plaintiff paid pursuant to the calculations required by 26 C.F.R. § 1.994–2(b)(3) and (c)(2). These calculations, implemented in Schedule P (Form 1120–DISC), Section A–2, and used by plaintiff in its original returns for tax years 1976–81, involved the following steps:

—an overall profit percentage was computed on all sales, domestic and foreign, of plaintiff, under a full costing, not marginal costing method;

—a separate overall profit percentage was computed for each product or product line; and

—the overall profit percentage so determined was then multiplied by gross receipts on sales of export property by Sales and plaintiff.

These calculations limited the amount of commission deemed paid to Sales by plaintiff. Such limitation of Sales' income reduced plaintiff's deduction for commissions paid to Sales and also reduced the total amount of combined taxable income eligible for deferral. This in turn increased the amount of tax due from plaintiff.

The following table summarizes the effect on plaintiff that would result from removal of OPPL requirements in the Treasury Regulations challenged by plaintiff.

| | Additional Deduction from Additional Commission to Sales | Additional Income from Increased Deemed Distribution | Net Deduction to DCC without OPPL |
|---|---|---|---|
| 1976 | 3,510,688 | 1,755,344 | 1,755,344 |
| 1977 | 4,607,055 | 3,354,627 | 1,252,428 |
| 1978 | 9,788,848 | 6,905,885 | 2,882,963 |
| 1979 | 12,629,308 | 8,647,286 | 3,982,022 |
| 1980 | 16,059,331 | 10,096,501 | 5,962,830 |
| 1981 | 17,001,722 | 10,969,137 | 6,032,585 |

By letters dated May 20, 1986, and October 24, 1986, defendant denied plaintiff's claims for refund based on the marginal costing issue, and plaintiff has executed Forms 2297 (Waiver of Statutory Notice of Claim Disallowance) as to defendant's denials. The amount of claim disallowed for the years 1977 through 1981 includes amounts arising from claims in addition to that based on marginal costing. All such additional issues subsequently have been agreed to by the parties.

The May 14 and August 2, 1984, amended returns differed substantially from the original returns. The differences included

the number and grouping of product lines, calculations of commissions on different portions of a group, and calculations of combined taxable income for some groups under Schedule P, Section A–1 (full costing), other groups under Section A–2 (marginal costing), and other groups under Section C (4% of gross receipts method). In the administrative proceedings, adjustments were made for many items, no claim is made for export promotion expenses, and all issues other than the marginal costing issue have been resolved.

Administrative adjustments for items no longer in issue have produced discrepancies in data that cannot be reconciled from materials in the record. These discrepancies, and differences between the parties as to the precise items to be included in marginal costing, are subsumed in the issue of law to be determined and need not be resolved. The parties, in the stipulation, have tailored the record to present a single legal issue: whether the IRS application of OPPL is contrary to the statute, and therefore the regulations should be declared void because erroneous and illegal.

## II.

■ One objective of the DISC program undertaken in 1971 was to reduce income taxes on the profits of United States domestically based exporters. A special benefit was conferred on a limited number of taxpayers, and a revenue loss could be expected as an overall effect of the program. Stimulation of domestic production and employment was ancillary to the primary function of tax collection. The basic responsibility of the Secretary of the Treasury and the IRS is to maintain and protect the public fisc. Deductions from taxable income, or special benefits to a particular group, are matters of grace. "The propriety of a deduction does not turn upon general equitable considerations such as a demonstration of effective economic and practical equivalence. Rather, it depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 148–49, 94 S.Ct. 2129,

2136–37, 40 L.Ed.2d 717 (1974) (quoting *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934)).

■ Statutes that confer special tax reduction benefits are to be construed strictly. Exceptions from the normal tax requirements of the Internal Revenue Code are to be defined narrowly. *Corn Products Refining Co. v. Commissioner,* 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955) (Court applying narrowly the definition of the term "capital assets" and interpreting broadly exclusions from the term).

■ Plaintiff's claim challenges and seeks to set aside part of the regulations the IRS was authorized to promulgate in its implementation of the DISC statute. The standards applicable to judicial review require all regulations to be reasonable relative to statutory objectives and criteria. To determine whether the statutory mandate has been implemented in a reasonable manner, the plain language of the statute, its origin, and its purpose are factors to be considered. *Rowan Cos. v. United States,* 452 U.S. 247, 253, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981) (Treasury regulation interpreting the definition of "wages" held invalid for failure to implement the statutory definition in a consistent or reasonable manner). To determine the meaning of regulations, rules of interpretation applicable to statutes are appropriate tools of analysis. The meaning of particular terms is to be derived not only by consideration of the words themselves, but also by examination of the content, the purpose, and the circumstances under which the terms are used. *General Electric Co. v. United States,* 610 F.2d 730, 221 Ct.Cl. 771 (1979).

The statute applicable to plaintiff's claim, IRC § 994—Inter–Company Pricing Rules, provides standards for the determination of the taxable income of a DISC and its related person, and authorizes the Secretary to issue regulations to implement those standards in the case of commissions, rentals and other income.

IRC § 994(a) applies to sales to a DISC, and the taxable income is based upon a

transfer price which would allow such DISC "to derive taxable income attributable to such sale (regardless of the sales price actually charged)". Three methods are provided for determining taxable income, which may not exceed the greatest amount derived from any of the methods. These three methods apply to commissions payable to Sales. The statutory scheme provides the following ceilings on taxable income of the DISC and the related person:

(1) 4 percent of the qualified export receipts on the sale of such property by the DISC plus 10 percent of the export promotion expenses of such DISC attributable to such receipts,

(2) 50 percent of the combined taxable income of such DISC and such person which is attributable to the qualified export receipts on such property derived as the result of a sale by the DISC plus 10 percent of the export promotion expenses of such DISC attributable to such receipts, or

(3) taxable income based upon the sale price actually charged (but subject to the rules provided in section 482).

Plaintiff does not claim any refund for export promotion expenses. The Section 482 method (3) is based upon full costing concepts. The 4 percent gross receipts method is not concerned with any type of costing. Marginal costing in export receipts is not authorized explicitly in any of the three methods of computation. Marginal costing concepts are authorized only for use in the 50–50 combined taxable income method (2), and only in those cases when the DISC is seeking to establish or maintain a market for export property.

The content of the term "gross receipts" is defined in the statute in IRC § 993(f). The term "combined taxable income" in IRC § 994(a)(2), and the term "marginal costing" in the caption to IRC § 994(b), however, are not defined, and the statute permits their content to be established in the regulations.

In addition to the general authority in IRC § 7805 to prescribe all rules and regulations needed to enforce the IRC, the statutory provisions on Inter–Company Pricing Rules provide explicit authority to promulgate regulations when the 50–50 combined taxable income method is used. IRC § 994(b) provides:

(b) *Rules for Commissions, Rentals, and Marginal Costing.*—The Secretary shall prescribe regulations setting forth—

(1) rules which are consistent with the rules set forth in subsection (a) for the application of this section in the case of commissions, rentals, and other income, and

(2) rules for the allocation of expenditures in computing combined taxable income under subsection (a)(2) in those cases where a DISC is seeking to establish or maintain a market for export property.

Regulations designed to implement the statutory authority were proposed on December 20, 1972 (37 F.R. 28065) and adopted formally on July 16, 1975 (40 F.R. 29826). The proposed rule making notice stated:

The proposed regulations are to be issued under the authority contained in Section 7805 of the Internal Revenue Code of 1954.

\* \* \* \* \* \*

1.994–2 Marginal costing rules.

(a) *In general.* This section prescribes the marginal costing rules authorized by section 994(b)(2).

A public hearing on the proposed regulations was requested and was held on March 13, 1973, after notice published in the Federal Register. 38 F.R. 4342.

The regulations on Inter–Company Pricing Rules for DISCs are contained in 26 C.F.R. § 1.994–1, and the rules for marginal costing are in 26 C.F.R. § 1.994–2. The regulations, as typical for income taxes, are lengthy, comprehensive and complex. There is no contention that the regulations are not clear; the dispute between the parties does not arise from differences as to the requirements of the provisions in the regulations that plaintiff challenges. Plaintiff's initial returns were computed in compliance with the calculations required

by the regulations. In the original returns for the period 1976–81, plaintiff understood the regulatory procedures, and filed without objection returns consistent with the regulatory standards. The dispute centers upon the application of an overall profit percentage limitation, which, plaintiff contends, is an arbitrary limitation on the amount of export income that denies domestic exporters the full tax deferral that Congress intended.

The regulations fleshed out the statutory framework. Rules were prescribed for computing the allowable price for a transfer from a related supplier to a DISC, under the three methods authorized. Section 1.994–1(c). The term "combined taxable income" was defined (Section 1.994–1(c)(6)), and, with respect to the calculations under the 50–50 combined taxable income method, if the DISC was eligible to be treated as seeking to establish or maintain a foreign market, marginal costing was allowed, provided variable costs, as defined in Section 1.471–11(b)(2)(i), and an overall profit percentage limitation, were used in the calculations. Section 1.994–2(b). Conditions applicable to the requirement of establishing or maintaining a foreign market were defined (Section 1.994–2(c)(1)), as well as a definition of the calculation of an overall profit percentage. Section 1.994–2(c)(2). The regulations, through the OPPL, provide a qualification test for the use of marginal costing, and a limitation on the tax benefit available to a DISC.

The test for "seeking to establish or maintain a market" was defined as follows:

(c) **Definitions—(1) Establishing or maintaining a foreign market.** A DISC shall be treated for its taxable year as seeking to establish or maintain a foreign market with respect to sales of an item, product, or product line of export property from which qualified export receipts are derived if the combined taxable income computed under paragraph (b) of this section [marginal or variable costs and OPPL] is greater than the combined taxable income computed under § 1.994–1(c)(6) [full costing].

The definition of the overall profit percentage (OPP) is as follows:

(2) **Overall profit percentage.** (i) For purposes of this section, the overall profit percentage for a taxable year of the DISC for a product or product line is the percentage which—

(a) The combined taxable income of the DISC and its related supplier plus all other taxable income of its related supplier from all sales (domestic and foreign) of such product or product line during the DISC's taxable year, computed under the full costing method, is of

(b) The total gross receipts (determined under § 1.993–6) from all such sales.

Marginal or variable costs, when used, were not permitted to result in a combined taxable income in excess of gross receipts multiplied by the OPP. This condition was defined as follows in Section 1.994–2(b)(3):

(3) **Overall profit percentage limitation.** As a result of such determination of costs attributable to such qualified export receipts for the DISC's taxable year, the combined taxable income of the DISC and its related supplier from sales of such item, product, or product line for the DISC's taxable year does not exceed gross receipts (determined under § 1.993–6) of the DISC derived from such sales, multiplied by the overall profit percentage (determined under paragraph (c)(2) of this section).

■ Deference routinely is granted to regulations needed for enforcement of the tax laws and the collection of taxes. The amount of deference to be given is substantial. The regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes, and should not be overruled except for weighty reasons". *Minnesota Power & Light Co. v. United States*, 782 F.2d 167 (Fed.Cir.1986) (quoting *Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 845, 55 L.Ed.2d 1 (1978) (citations omitted)); *see also Commissioner v. Portland Cement Co.*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981); *Thomas International, Ltd. v. United States*, 773 F.2d 300, 303

(Fed.Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986); *Greenacre Foundation v. United States,* 762 F.2d 965, 967 (Fed.Cir.1985); *Massachusetts Mut. Life Ins. Co. v. United States,* 761 F.2d 666, 671 (Fed.Cir.1985); *Rowe v. United States,* 655 F.2d 1065, 1067, 228 Ct.Cl. 269 (1981).

■ The parties differ whether the DISC regulations are legislative or interpretative. A court may, where appropriate, substitute its judgment for an agency's when the regulation is "interpretative" as opposed to "legislative". *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). A legislative regulation on the other hand, if valid, has the same effect as a statute. *Batterton v. Francis,* 432 U.S. 416, n. 9, 97 S.Ct. 2399, n. 9, 53 L.Ed.2d 448 (1977). Where the statutory language is unclear, a term may be found to be "so general ... as to render an interpretative regulation appropriate". *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 476, 99 S.Ct. 1304, 1306, 59 L.Ed.2d 519 (1979) (upholding regulation where the term "business league" had no well-defined meaning or common usage outside the perimeters of the Code section in which it was referred).

■ Plaintiff does not challenge the Secretary's definition of the term "marginal costing" set forth in the regulations. Plaintiff, however, disputes the use of the term as it relates to the statutory language. The burden is on the plaintiff to demonstrate that the Secretary has failed to "implement the congressional mandate in some reasonable manner" by issuing regulations which are contrary to the statute. *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967).

These regulations initially were proposed in 1972, adopted in 1975, and have been in effect since that time. Plaintiff did not challenge the regulations in any manner until it filed amended returns in 1984, after the DISC program had been modified.

Other parts of the Section 994 regulations have been challenged, and the regulations have been found to be in accord with statutory authority. Treasury regulation § 1.994–1(e)(3) (which required the commission to be paid within 60 days of the close of the DISC's taxable year) was reviewed and upheld. The Federal Circuit concluded that the 60 day payment requirement "validly implements the statutory purpose, and constitutes a permissible exercise of the Commissioner's broad authority to prescribe 'needful rules and regulations for the enforcement of' the DISC provisions." *Thomas International, Ltd. v. United States,* 773 F.2d at 303. The Eleventh Circuit (*CWT Farms, Inc. v. Commissioner,* 755 F.2d 790 (11th Cir.1985), *cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986) (*aff'g* 79 T.C. 1054 (1982)) noting that the "Tax Court had avoided the issue", found the source of authority for regulations § 1.993–2(d)(2) and § 1.994–1(e)(3), which were upheld as valid, to be 7805(a).

In *Anchor Hocking Corp. v. United States,* (11 Cl.Ct. 173 (1986)), the Claims Court upheld Section 1.994–1(c)(6)(v) (1977) (regulation required CTI be reduced by the amount of any discount when accounts receivable are transferred by a related supplier to its DISC) as a valid interpretation of the statutory mandate. In upholding the same regulation, the Tax Court (*Dresser Industries, Inc. v. United States,* 92 T.C. 1276 (1989)) noted that although in its opinion the regulation was issued under the specific authority of Section 994(b)(1), it would survive scrutiny under a less deferential standard of review as applied to interpretative regulations under 7805(a).

The regulations in this case (Section 1.994–2(b)(3) and (c)(2)) were issued under the authority explicitly granted in IRC § 994(b)(2). Since Congress has determined that it is for the Secretary, not the court, to prescribe rules, the regulations are entitled to substantial deference.

■ The OPP calculation, and the OPPL limitation, are reasonable means to deal with the authorization to use marginal costing methods when the DISC is seeking to establish or maintain a foreign market for a related person. These provisions are in harmony with the objectives sought by the

statute, and plaintiff has not shown the congressional intent was otherwise.

The phrase "seeking to establish or maintain a market" is a qualification upon the marginal costing *benefit*, not a statutory mandate to provide plaintiff, a capital intensive taxpayer, an advantage not shared by labor intensive taxpayers. Insofar as the DISC legislation was enacted to provide a stimulus for exports, those exporters whose export profits exceeded worldwide profits were not in need of a stimulus. The rationale of the OPPL is that Congress did not direct that the Secretary was to ensure that foreign sales were to be more profitable than worldwide sales.

If Congress intended marginal costing to be provided for virtually all exporters, it would have been one of the transfer pricing methods in IRC § 994(a) rather than an exception set forth at IRC § 994(b)(2). The three methods in IRC § 994(a) were to be "used in determining *permissible* profits ... which a DISC may earn on products which it purchases from a related company and then resells for export". S.Rep. No. 437, 92nd Cong., 1st Sess. *reprinted in* 1971 U.S.Code Cong. & Ad News, 1918, 2013. The marginal costing procedure of IRC § 994(b)(2) is a further exception of taxing gross income and as such is to be construed strictly.

The regulation plaintiff challenges utilizes objective criteria for determining when the related person is seeking to establish or maintain a market, as well as for determining marginal costs when applying the rules governing allocation of expenses. The regulations require the combined taxable income computed under the marginal costing rules to be greater than the combined taxable income under the full costing method. Ease in administration is a factor to be considered. *Greenacre Foundation v. United States*, 6 Cl.Ct. 113 (1984), *aff'd*, 762 F.2d 965, 968 (Fed.Cir.1985).

█ Plaintiff argues that Treasury Regulations §§ 1.994–2(b)(3) and (c)(2) were issued in violation of the Administrative Procedure Act because there was a failure to comply with the "notice and comments" requirement. In order for a rule to be promulgated, the Administrative Procedure Act (5 U.S.C. §§ 551 et seq. (1976)) requires publication of the final rule with a concise statement of its basis and purpose not less than 30 days before the rule's effective date. 5 U.S.C. § 553(d).

Plaintiff maintains the purpose of this requirement is two-fold: first, it alerts the parties so that comments can be submitted based upon factors considered by the agency. Second, it provides the courts with a basis for substantive review of the agency's action.

The purpose of requiring a statement of the basis and purpose to be published with the regulations is to enable courts, which have the duty to exercise review, to be aware of the legal and factual framework underlying the agency's action. *American Standard, Inc. v. United States*, 602 F.2d 256, 220 Ct.Cl. 411 (1979) *citing SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943). Derived from the very rationale of the requirement is an exception to its overtechnical application. When the basis and purpose of the rule is inherent in the rule and the enabling statute, then no separate statement is required.

As to the merits of plaintiff's procedural claim, the reasonableness of the regulations can be determined judicially notwithstanding the notice of rule making. Clearly the regulations were promulgated in order to implement IRC § 994. Comments to the proposed regulations were submitted, after which a public hearing was held. The regulations were not issued in violation of the APA requirement of a statement of basis and purpose.

For the foregoing reasons, defendant's cross-motion for summary judgment is ALLOWED. The Clerk is directed to dismiss the complaint. Costs to defendant.