**Lawrence V. BROOKES and Katharine T. Brookes, Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 498–89 T.**

United States Claims Court.

June 29, 1990.

Lawrence V. Brookes, San Francisco, Cal., for plaintiffs.

Mary M. Abate, with whom were Asst. Atty. Gen. Shirley D. Peterson, Mildred L. Seidman, and David Gustafson, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This is an action brought under Section 7422(a) of the Internal Revenue Code of 1954 for a refund of federal income tax.[1] The claim arises from an investment tax credit claimed by plaintiffs in an amended return for the tax year 1983, and a partnership loss claimed in the same year. Defendant has moved pursuant to RUSCC 12(b)(1) for dismissal of the action. It contends that the court lacks subject matter jurisdiction by operation of Sections 6221 through 6232 ("partnership provisions").

It also contends that, to the extent the complaint seeks a loss deduction due to fraud, the suit is barred by the doctrine of variance. The matter has been fully briefed and argued, and for the reasons expressed herein, the motion is granted.

## FACTUAL BACKGROUND [2]

Plaintiffs timely filed their income tax return for the tax year 1983, reporting a tax due of $4,791. Plaintiffs arrived at that amount by, *inter alia*, claiming an investment tax credit of $20,241, and a partnership loss of $8,678. Both the investment credit and the loss resulted from plaintiffs' participation, in 1983, in Barrister Equipment Associates Series 122, a partnership. Of the $20,241 investment tax credit claimed on the 1983 return, plaintiffs claimed $6,745 as a carryback to tax year 1980. Plaintiffs simultaneously filed an amended return for 1980, claiming a refund for $6,745 attributable to the carryback from 1983. Plaintiffs received a refund for this amount.

On December 22, 1986, plaintiffs submitted to the Internal Revenue Service ("IRS") amended federal income tax returns for the tax years 1980 and 1983. Plaintiffs no longer claimed the $20,241 investment tax credit, and enclosed a check in the amount of $27,131. In a letter attached to the amended return, plaintiffs explained how they arrived at that amount: "[E]nclosed please find taxpayers' check for $27,131. This represents payment of $20,241 in tax and $6,890 in interest. Interest is due from April 15, 1984, and is calculated through December 31, 1986." [3]

---

1. All Code references are to the Internal Revenue Code of 1954. Although Section 2 of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, redesignated the Internal Revenue Code of 1954 "as heretofore, hereby, or hereafter amended" the "Internal Revenue Code of 1986," the tax periods at issue in this case antedate the Tax Reform Act of 1986. For clarity, references to the operative Internal Revenue Code provisions relevant to this proceeding will be to the Internal Revenue Code of 1954. The Internal Revenue Code is codified at Title 26 of the United States Code.

2. The facts are drawn from the complaint and from the attachments to defendant's motion to dismiss.

3. Defendant asserts that plaintiffs overpaid the interest due on the amount of tax they repaid for 1983, and received a refund in the amount of $2,295.84 on December 31, 1986. Plaintiffs state, however, that they did not receive a refund, but instead the amount of $2,295.84 was credited as interest charged for the tax year 1980. The balance of $16.44, according to plaintiffs, may have been credited to unassessed tax liability for 1983. This dispute does not preclude dismissal.

On May 4, 1987, the IRS sent to Barrister Associates, the tax matters partner for Barrister Series 122, and to all notice partners, including plaintiffs, a notice of proposed adjustments for the tax year that ended October 31, 1983.[4] This letter informed plaintiffs that the IRS proposed adjustments for the tax year 1983, and outlined the procedures for protesting the findings for both the tax matters partner and notice partners. It is not disputed that plaintiffs are notice partners, not tax matters partners.

On October 5, 1988, plaintiffs submitted a second amended federal income tax return for the tax year 1983. On this amended return, labeled "Claim for Refund", plaintiffs claimed a refund in the amount of $33,876. This amount resulted from plaintiffs, once again, claiming an investment tax credit of $20,241. Plaintiffs attached an explanation to this amended return, which states:

> Taxpayers filed an amended return dated December 19, 1986, with payment of $27,131.00 which was credited January 7, 1987. The Fresno Service Center treated this as payment for 1983 and an investment credit carryback from 1983 and to 1980. The crediting of taxpayers' account for 1983 and 1980 (carryback) was inconsistent and erroneous. This refund claim covers 1983 and any carryback from 1983 and includes paid interest. This amount of the refund claim is limited to $27,131.00 plus interest from December 19, 1983. The attached statement is from a protest for which no hearing was given.

The attached statement alluded to in plaintiffs' explanation above is a three and one-half page document describing the partnership. In this statement, plaintiffs justify their entitlement to an investment tax credit, asserting that the investment was profit, not tax-motivated.

On March 29, 1989, the IRS mailed a letter notifying plaintiffs that any action on their claim would be suspended until the IRS had completed examination of the tax shelter promotion for Barrister Series 122. Six months later, on September 5, 1989, the IRS sent a Notice of Final Partnership Administrative Adjustment ("FPAA") to the tax matters partner, and to the notice partners. The letter contains the following information:

> If you are a tax matters partner ... and want to contest these adjustments in court, you have 90 days from the date this letter was mailed to file a petition for a readjustment of the partnership items with the United States Tax Court, the United States Claims Court, or the District Court of the United States for the district in which the partnership's principal place of business is located. During this 90 day period, no other partner may file a petition for judicial review, and the filing of a petition by the tax matters partner precludes all other actions.
>
> If the tax matters partner has not filed a petition by the 90th day from the date the FPAA was mailed, any other partner entitled to receive this notice under Section 6223 of the Internal Revenue Code ... may petition one of these courts after the 90th day, but on or before the

---

**4.** Section 6231(a)(7) and (8) defines the terms "tax matters partner" and "notice partner" as follows:

 (7) *Tax Matters Partner.*—The tax matters partner of any partnership is—

 (A) the general partner designated as the tax matters partner as provided by the regulations, or

 (B) if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved....

 (8) *Notice Partner.*—The term "notice partner" means a partner who, at the time in question,

would be entitled to notice under subsection (a) of section 6223....

Section 6223 states:

(a) Secretary Must Give Partners Notice of Beginning and Completion of Administrative Proceedings.—The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of—

 (1) the beginning of an administrative proceeding at the partnership level with regard to a partnership item, and

 (2) the final partnership administrative adjustment resulting from any such proceeding.

150th day, from the date the FPAA was mailed to the tax matters partner.

On September 14, 1989, plaintiffs filed this complaint for a refund in the amount of $33,876, pursuant to Section 7422(a). Subsequently, on November 17, 1989, the Barrister Series 122 tax matters partner filed a petition in the United States Tax Court for readjustment of the partnership's liability for the 1983 tax year.

## DISCUSSION

The motion to dismiss raises two issues. The initial question is whether plaintiffs' suit for refund regarding the investment tax credit claimed on their amended return for 1983 is barred by the partnership provisions. A secondary question is whether plaintiffs' claim for a loss deduction is barred by the doctrine of variance. The court finds, for the following reasons, that plaintiffs did not comply with Sections 6226(b) and 7422(h), and that the action must be dismissed insofar as plaintiffs seek a refund with regard to an investment tax credit. The court also agrees with defendant that the doctrine of variance bars the claim based on loss deduction.

### The Investment Tax Credit

Sections 6221 through 6232, added to the Code by section 402 of the Tax Equity and Fiscal Responsibility Act of 1982, are labeled "Subchapter C—Tax Treatment of Partnership Items." Congress added this subchapter so that the tax treatment of certain partnership items—such as income, loss, deductions, and credits—would be determined at the partnership level in a unified way rather than in separate proceedings by the partners. H.R.Conf.Rep. No. 97–760, 97th Cong., 2d Sess. 600 (1982), U.S.Code Cong. & Admin.News 1982, pp. 781, 1371, 1372. This is reflected in Section 6221, which directs that, "Except as provided in this subchapter, the tax treatment of any partnership item shall be determined at the partnership level." There is no question that the investment credits are "part-

nership items." *See* 26 C.F.R. § 301.6231(a)(3)–1(a)(vi)(A) (1989).

 Section 7422(h), entitled "Special Rules for Actions With Respect to Partnership Items", provides that "No action may be brought for a refund attributable to partnership items ... except as provided in section 6228(b) or section 6230(c)." Section 6228(b) refers to circumstances where an Administrative Adjustment Request ("AAR") has been filed by a partner. No AAR was filed in the present case, and thus plaintiffs do not benefit from the exception outlined in that section. Furthermore, as defendant correctly points out, even if the plaintiffs had filed an AAR, Section 6228(b)(2)(C) bars the filing of a petition "with respect to an administrative adjustment request for a partnership taxable year after the Secretary mails to the partnership a notice of the beginning of a partnership proceeding with respect to such year." The Secretary mailed plaintiffs a notice of partnership proceedings on May 4, 1987, well before the filing of this complaint on September 14, 1989. Thus, plaintiffs' complaint is barred even if an AAR had been filed. Section 6230(c) concerns errors in the calculation of a computational adjustment. Again, this exception does not apply in the present case—no computational error occurred.

The FPAA was mailed on September 5, 1989. Seven days later, on September 12, 1989, plaintiffs filed the pending complaint. Seventy-three days after the mailing of the FPAA, on November 17, 1989, the Barrister Series 122 tax matters partner filed a petition in the United States Tax Court. The issue is whether the plaintiffs' claim is barred because they filed before the expiration of the 90–day period, and because the tax matters partner subsequently filed a petition in Tax Court.

 After the IRS mails a FPAA to a tax matters partner, Section 6226(b) applies. It states in pertinent part[5]:

(b) Petition by Partner Other Than Tax Matters Partner.—

---

**5.** Subsection (a) allows the tax matters partner 90 days after the FPAA is mailed to file a petition for readjustment for such taxable year with

either the Tax Court, the district court of the United States where the partnership's principal place of business is located, or the Claims Court.

(1) In general.—If the tax matters partner does not file a readjustment petition under subsection (a) with respect to any final partnership administrative adjustment, any notice partner ... may, within 60 days after the close of the 90–day period set forth in subsection (a), file a petition for a readjustment of the partnership items for the taxable year involved with any of the courts described in subsection (a).

Therefore, a notice partner may only file a petition after the expiration of the 90–day period, and then only if the tax matters partner has not filed during that 90–day period. In the present case, plaintiffs' complaint is defective in two respects. It was filed within the 90–day period during which only the tax matters partner may file a petition, and the tax matters partner did in fact file, thereby terminating any right in plaintiffs to do so. Plaintiffs filed their petition during a period when they had no statutory right to do so. The time provisions of section 6226(b) are jurisdictional and not merely procedural. *See United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *Missouri Pac. R.R. v. United States*, 214 Ct.Cl. 623, 624, 558 F.2d 596, 597 (1977); *Buzick v. United States*, 15 Cl.Ct. 289, 293 (1988).

█ In their response brief, plaintiffs do not question the applicability of the partnership provisions. Instead, they point out that there is pending before the Tax Court an allegation by the tax matters partner that the FPAA was not timely filed. They contend that the timeliness of the FPAA depends on the validity of time extensions granted by "Barrister Associates." The tax matters partner, "Barrister Associates, Inc.", contends before the Tax Court that it did not authorize the extensions. From this it follows, according to plaintiffs, that the Tax Court may be without jurisdiction.

As defendant correctly points out, however, the Tax Court has had occasion to speak to whether invalidity of the FPAA deprives the Tax Court of jurisdiction over a partnership's petition. In *Genesis Oil & Gas Ltd. v. Commissioner*, 93 T.C. 562 (1989), the court held that the untimeliness of the FPAA is an affirmative defense for the taxpayer. 93 T.C. at 564. The court reaffirmed, however, that statutory time limits for filing a petition in response to the FPAA are jurisdictional. In short, whether or not the FPAA was timely is a "determination on the merits of the case." *Id.*

During oral argument, plaintiffs raised the additional concern that they may be without a remedy in the Tax Court.[6] Plaintiffs described a scenario precipitated by the possible acceptance of the tax matters partner's argument concerning invalidity of the FPAA. The FPAA was mailed after the plaintiffs had already paid the amounts disputed presently in this court—amounts directly connected to the investment credits at issue in the Tax Court. Plaintiffs concern is that they would not benefit from a procedural ruling favorable to the partnership, because the FPAA does not presume a dispute as to amounts already paid by plaintiffs in the first amended return. For this reason, plaintiffs contend, a stay of this proceeding is appropriate.

Even if plaintiffs' concern is well-founded,[7] they have provided no principled rea-

---

**6.** Under Section 6226(c) of the Code, the plaintiffs will automatically be made a party to the pending tax case, and will thus have an opportunity to participate in the litigation:

 (c) Partners Treated as Parties.—If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year—

 (1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and

 (2) the court having jurisdiction of such action shall allow each person to participate in the action.

Counsel for plaintiffs represented at oral argument that plaintiffs had been notified by the Tax Court that they could participate in that proceeding.

**7.** Defendant pointed out in oral argument, and the court agrees, that the effects of a victory for plaintiffs in Tax Court, even if based on the invalidity of the FPAA, would appear to be conclusive regarding the investment credit issue for all partners and for all purposes. By operation of collateral estoppel, plaintiffs would appear to be able to assert, in a proper forum, that the investment credit issue raised by the IRS was

son to ignore the partnership provisions. For the reasons already discussed, Sections 6226(b) and 7422(h) bar the action here, at least with respect to the investment credit. Congress has not created an exception for the circumstances encountered here that would allow the court to retain jurisdiction.

*The Claimed Loss Deduction*

 The next issue is whether plaintiffs' claim based on a loss deduction was adequately raised in their initial claim for refund filed with the IRS. Section 7422(a) provides that no suit may be maintained in any court for taxes erroneously assessed or collected "until a claim for refund or credit has been duly filed ..." It is well established, under the doctrine of variance, that the court lacks subject matter jurisdiction over a ground for recovery which was not adequately raised in the claim for refund, and that in order for this court to have jurisdiction over the claim, the IRS must have been given "adequate notice ... of the nature of the claim and the specific facts upon which it is predicated ..." *Rowe v. United States*, 228 Ct.Cl. 269, 279, 655 F.2d 1065, 1071 (1981); *Cook v. United States*, 220 Ct.Cl. 76, 86, 599 F.2d 400, 406 (1979); *Commercial Solvents Corp. v. United States*, 192 Ct.Cl. 339, 347, 427 F.2d 749, 753, *cert. denied*, 400 U.S. 943, 91 S.Ct. 242, 27 L.Ed.2d 247 (1970); *Union Pacific R.R. v. United States*, 182 Ct.Cl. 103, 109, 389 F.2d 437–442 (1968); *Aetna Life Ins. Co. v. United States*, 16 Cl.Ct. 364, 371 (1989).

Plaintiffs filed their second amended return labeled "claim for refund" with the IRS on October 5, 1988. On this return, the only change listed in the column of adjustments was $20,241 for the investment credit. This is the same credit initially claimed in plaintiffs original return for 1983, and subsequently repaid to the IRS in plaintiffs' first amended return in 1986. As to the amount of deductions, plaintiffs put "0" in the adjustment column. There is no reference in the claim for refund to a loss deduction incurred due to fraud.

Attached to the refund claim is plaintiffs' explanation which states, in part, that:

resolved in favor of the partnership. Those

"taxpayers filed an amended return dated December 19, 1986 with payment of $27,-131.00 which was credited January 7, 1987...." This amount of the refund claim is limited to $27,131.00 plus interest...." In the first amended return, plaintiffs stated that the check for $27,131 "represents payment of $20,241 in tax and $6,890 in interest...." Neither the first amended return nor the "claim for refund" refer to a loss due to fraud.

 Furthermore, as defendant correctly points out, the "mere availability" of the facts available to set forth a claim based on loss deductions is not sufficient. Plaintiffs have the burden to notify the IRS of their intentions. *Commercial Solvents Corp. v. United States*, 192 Ct.Cl. 339, 348–349, 427 F.2d 749, 755, *cert. denied*, 400 U.S. 943, 91 S.Ct. 242, 27 L.Ed.2d 247 (1970).

Accordingly, the court finds that the grounds set forth in plaintiffs' complaint constitute a substantial variance from the claim for refund filed with the IRS. Therefore, plaintiffs' claim based on loss deduction must be dismissed.

### CONCLUSION

For the reasons stated above, the court lacks subject matter jurisdiction. The complaint is dismissed. Judgment to be entered accordingly. No costs.

consequences flow to plaintiffs.