NUCORP, INC. & Pin Oak Petroleum, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 90–3847T.

United States Claims Court.

May 10, 1991.

Norman A. Lofgren, Dallas, Tex., for plaintiffs.

Stuart J. Bassin, Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, for defendant.

## OPINION

LYDON, Senior Judge:

This tax refund suit is before the court on defendant's motion to dismiss counts 3 and 4 of plaintiffs' four-count complaint for failure to state a claim, pursuant to RUSCC 12(b)(4), for failure to file proper administrative tax refund claims with the Internal Revenue Service, which plaintiffs oppose. After careful consideration of the parties' submissions, oral argument having been held on May 8, 1991, the court grants defendant's motion to dismiss.

## FACTS

Plaintiff Nucorp, Inc. (Nucorp) is the parent corporation of plaintiff Pin Oak Petroleum, Inc. (Pin Oak) which, in turn, is the successor corporation to four predecessor subsidiary corporations wholly owned by Nucorp: Nucorp Energy, Inc. (NEI), Nu-

corp Energy Company (NEC), Chinook Pipeline, Inc. (CPI), and Chinook Resources, Inc. (CRI). Nucorp, a calendar year taxpayer, filed a consolidated federal corporate income tax return for the 1984 tax year on September 16, 1985, which included all four subsidiaries listed above. On July 31, 1986, the four subsidiaries merged into one surviving entity, Nucorp Energy, Inc., which immediately changed its name to Pin Oak Petroleum, Inc.

In 1984, each of the four subsidiaries owned a number of oil and gas properties and each was a "producer" of crude oil within the meaning of the windfall profits tax provisions of the Internal Revenue Code (Code), 26 U.S.C. §§ 4986, 4996.[1] As "producers," these subsidiaries were subject to the Code's windfall profit tax, §§ 4986 *et seq.*, on their crude oil production.[2] In 1984, the windfall profit tax was imposed on each of these subsidiaries. The tax was withheld and paid over to the Internal Revenue Service (the Service) by the first purchasers of the crude oil. First purchasers are required to report to the Service the tax withheld on Form 6248, entitled "Annual Information Return—Windfall Profit Tax" (information return), a copy of which is sent to the oil producers from each first purchaser.

None of the subsidiaries was required to file, nor did file, Form 720 Quarterly Excise Tax Returns with respect to 1984 windfall profit taxes. All four subsidiaries claim they overpaid their windfall profit tax liability by reason of the net income limitation as set forth in § 4988. None of the 1984 corporate income tax returns filed by the subsidiaries claimed the alleged overpayments of windfall profit taxes as a credit against the consolidated group's federal income tax liability. The four subsidiaries allege overpayment of windfall profit tax liability in the following amounts: NEI:

$100,485; CPI: $40,193; CRI: $32,912; and NEC: $2,094.

On September 15, 1988, each of the four subsidiaries filed an administrative claim with the Service seeking a refund of their alleged overpayments of windfall profit tax liability. Each of the refund claims consists of three pages. On page one is Form 843, entitled "Claim." All four subsidiaries state the identical reason for the refund claim: "Protective claim, taxpayer is claiming a refund of windfall profit tax withheld during the year ending December 31, 1984, due to the net income limitation and withholding error. Additional information will be sent shortly, this claim is not limited to the stated amount." Each claim states "the amount to be refunded or abated" is $1.00.[3]

On pages two and three of the refund claims is Form 6249, entitled "Computation of Overpaid Windfall Profit Tax." Each subsidiary states on page one of Form 6249 that the "overpayment resulting from the Net Income Limitation" is $1.00. The "total amount of credit or refund" is also stated to be $1.00. On the second page of Form 6249, under part V, the taxpayer is asked to name the property or properties involved in the net income limitation calculations, as a separate net income limitation must be computed for each property. Each subsidiary responded by stating "Various leases." The subsidiaries provided no other information requested on the form with regard to the properties involved in the net income limitation calculation, such as gross income, reductions, gross income from oil removal, production and severance tax, lease operating expenses, depreciation, overhead, cost depletion, other expenses, expenses not attributable to oil production, total expenses for the property, taxable income from the property, and number of taxable barrels of crude oil sold from the property. The only figures filled in are

---

1. Hereinafter, all statutory sections refer to the Internal Revenue Code (Code), 26 U.S.C., and to the Treasury Regulations (Treas.Reg.) promulgated thereunder.

2. The windfall profit tax on crude oil production was repealed in 1988. Pub.L. No. 100–418, § 1941, 102 Stat. 1322 (1988).

3. Nothing can be found in the Code, regulations or case law relative to the efficacy of filing a "protective claim." Ostensibly, plaintiffs used the term "protective claim" for descriptive purposes only.

"amount of overpayment" and "total amount of overpayment," each of which is stated to be $1.00. All four refund claims contained the statement that "[a]dditional information will be sent shortly." However, plaintiffs admit that no supplemental information was sent to the Service before December of 1988.

By two similar letters dated November 1, 1988, the Service disallowed the refund claims of NEC and CRI, stating that "[t]here is no authority to file protective claims for Windfall Profit Tax under the Internal Revenue Code. Therefore, you need to file a claim with all of the necessary information." However, plaintiffs did not attempt to amend the original refund claims of NEC and CRI after they received these notices of disallowance.

Plaintiffs received no notice of disallowance from the Service with regard to NEI's refund claim until December 21, 1988, and they received no notice of disallowance from the Service with regard to CPI's refund claim until January 4, 1989. Meanwhile, on or about December 5, 1988, plaintiffs attempted to supplement the refund claims of NEI and CPI by sending amended claim forms with additional information to the Service. NEI supplemented its original refund claim with twenty-eight pages of additional information. CPI supplemented its original refund claim with sixteen pages of additional information.

The amended claims of CPI and NEI consist of another Tax Refund Claim Form 843, both of which state: "The taxpayer is amending an earlier timely filed claim for refund of windfall profit tax withheld, during the year ending December 31, 1984, due to the net income limitation and withholding error. The original claim was filed on a timely basis September 15, 1988. (See attached copy)." In addition, both CPI and NEI included an amended Computation of Overpaid Windfall Profit Tax Form 6249, each of which states the exact amount of windfall profit tax overpaid and the exact amount of refund claimed. Attached to NEI's amended claim forms were four pages of computer-generated data regarding its oil leases which is necessary to perform the net income limitation calculations, and twenty-four pages of information returns from first purchasers. Attached to CPI's amended claim forms were four pages of computer-generated data for the net income limitation calculations, and twelve pages of information returns from first producers. None of this attached information was included in their original refund claims.[4]

NEI received its first notice of disallowance from the Service with regard to the refund claim by letter dated December 21, 1988, in which the Service stated that the December 5, 1988 supplemental claim data was rejected as a separate claim because it was not filed within two years from the date of payment. The letter also stated that "[a]lthough a protective claim was filed September 16, 1988, it was also disallowed since there is no authorization for protective claims for windfall profit tax under the Internal Revenue Code." CPI received its first notice of disallowance from the Service with regard to the refund claim by letter dated January 4, 1989. In the letter, the Service stated that the December 7, 1988 supplemental claim data was rejected as a separate claim because it was not filed within two years from the date of payment. The letter also stated that "[a]lthough a protective claim was filed earlier, it was not honored since protective claims for windfall profit tax are not authorized under the Internal Revenue Code." Both CPI and NEI responded with letters to the Service in which they attempted to persuade the Service of the validity of their protective and supplemental refund claims. In response, the Service advised CPI and NEI by letters dated March 10, 1989 and May 9, 1989 respective-

---

**4.** At oral argument, defendant persuasively demonstrated the need for supplementing the original refund claims with additional information and data by using as an exhibit the supplemental claim of CPI (which claim is no longer the subject of the pending motion). As dis-

cussed above, CPI's supplemental claim contains details on the first three pages that were not included in the original refund claim, plus sixteen pages of additional information that was not included in the original claim.

ly, that it was disallowing the protective and supplemental refund claims as untimely pursuant to the Code's three-year statute of limitations, § 6511(a).

Plaintiffs filed the present refund suit in this court on October 10, 1990. Defendant originally filed a motion to dismiss all four of plaintiffs' claims for lack of subject matter jurisdiction on January 25, 1991. Plaintiffs filed their opposition thereto on March 11, 1991. In its reply brief, dated April 15, 1991, defendant withdrew its motion to dismiss with regard to the refund claims of CPI and NEI because of additional documentation included in plaintiffs' opposing brief. In addition, defendant asked the court to treat its motion to dismiss for lack of jurisdiction as one for failure to state a claim, pursuant to RUSCC 12(b)(4).[5]

## DISCUSSION

The burden of proof in a tax refund suit rests with plaintiffs, who must establish, by a preponderance of the evidence, any amount they are entitled to recover. *See Halvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 (1935); *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932); *Bob Jones University v. United States*, 229 Ct.Cl 340, 350, 670 F.2d 167, 174 (1982); *Allstate Ins. Co. v. United States*, 20 Cl.Ct. 308, 312 (1990). In the present procedural posture, the court will construe the undisputed factual allegations of the complaint favorably to plaintiffs. *See Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *Galveston by Bd. of Trustees v. United States*, 22 Cl.Ct. 600, 605 (1991); *Favell v. United States*, 22 Cl.Ct. 571, 575 (1991);

*Burgess v. United States*, 20 Cl.Ct. 701, 703 (1990) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

Defendant's position is that the tax refund claims of NEC and CRI filed in this court do not conform to statutory and regulatory requirements because the administrative refund claims fail to state the grounds upon which the refunds are requested with adequate specificity, and therefore, plaintiffs fail to state a proper cause of action with respect to these claims. Defendant concedes that, accepting plaintiffs' factual allegations as true for the purpose of the pending motion to dismiss, the administrative tax refund claims of NEI and CPI were properly amended and thus their refund claims in this court are not subject to dismissal for failure to state a claim.

Plaintiffs' position is that the original administrative refund claims of all four subsidiaries, filed September 15, 1988, provided adequate notice to the Service with regard to the nature of the refund claims. Plaintiffs assert that the Service had in its possession the requisite data to perform the necessary computations with regard to the refund claims. In addition, plaintiffs allege that the Service has consistently allowed plaintiffs' windfall profit tax refund claims in prior years. Finally, plaintiffs contend that, even if the original refund claims are insufficient, NEI and CPI properly amended their claims by submitting to the Service supplemental data before the Service disallowed their claims. As stated above, the refund claims of NEI and CPI

---

5. Since the filing of defendant's original motion to dismiss for lack of subject matter jurisdiction, the Claims Court determined in *Galveston by Bd. of Trustees v. United States*, 22 Cl.Ct. 600 (1991), that a motion to dismiss challenging the adequacy of a refund claim is more properly brought under RUSCC 12(b)(4), failure to state a claim. *Galveston, supra*, 22 Cl.Ct. at 605. In *Galveston*, the court explained that there are two distinct meanings of "jurisdiction." One meaning refers to the court's general powers to adjudicate in specific areas of substantive law, known as subject matter jurisdiction. The second meaning refers to the court's general power to act on the facts peculiar to a specific claim.

The variance issue invokes the second meaning of jurisdiction. *Galveston, supra*, 22 Cl.Ct. at 606. The court then explained the importance of distinguishing between a dismissal based on lack of subject matter jurisdiction and a dismissal for failure to state a claim. "[W]here the facts in the pleadings establish the court lacks jurisdiction to exercise its general power in the particular case, ... dismissal for failure to state a claim upon which relief can be granted, is on the merits as to those facts.... A dismissal on the merits carries *res judicata* effect." *Galveston, supra*, 22 Cl.Ct. at 606 (citing *Do–Well Machine Shop, Inc. v. United States*, 870 F.2d 637, 639–40 (Fed.Cir.1989)).

are no longer the subject of defendant's motion to dismiss.

The jurisdictional requirements for filing tax refund suits are governed by the Code and Treasury Regulations promulgated thereunder. Section 7422(a) of the Code provides, in pertinent part:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422. One of the pertinent regulations the Secretary established pursuant to section 7422 is Treasury Regulation § 301.6402–2(b)(1), which provides, in part:

(b) *Grounds set forth in claim.*

(1) ... The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.... A claim which does not comply with this paragraph shall not be considered for any purpose as a claim for refund or credit.

26 C.F.R. § 301.6402–2(b)(1).

The requirement of detail in setting forth the exact basis for a refund claim has been recognized by the Supreme Court, the Federal Circuit, its predecessor the Court of Claims, and this court. *See, e.g., United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 272, 51 S.Ct. 376, 377–78, 75 L.Ed. 1025 (1931); *Ottawa Silica Co. v. United States,* 699 F.2d 1124, 1138 (Fed.Cir.1983); *L.E. Myers Co. v. United States,* 230 Ct.Cl. 142, 146–47, 673 F.2d 1366 (1982); *Union Carbide Corp. v. United States,* 222 Ct.Cl. 75, 90, 612 F.2d 558, 566 (1979); *Union Pacific R.R. v. United States,* 182 Ct.Cl. 103, 108, 389 F.2d 437, 442 (1968); *Galveston, supra,* 22 Cl.Ct. at 606; *Brookes v. United States,* 20 Cl.Ct. 733, 738 (1990); *Arnold v. United States,* 19 Cl.Ct. 521, 525 (1990).

The reason behind this rule of specificity in refund claims, also known as the doctrine of variance, is to

prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. *United States v. Memphis Cotton Oil Co.,* 288 U.S. 62 [53 S.Ct. 278, 77 L.Ed. 619] (1933). In addition, the Commissioner is. provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend.

*Union Pacific, supra,* 182 Ct.Cl. at 109, 389 F.2d at 442; *see also Rowe v. United States,* 228 Ct.Cl. 269, 279, 655 F.2d 1065, 1071 (1981); *Cook v. United States,* 220 Ct.Cl. 76, 86, 599 F.2d 400, 406 (1979); *Commercial Solvents Corp. v. United States,* 192 Ct.Cl. 339, 347, 427 F.2d 749, 753, *cert. denied,* 400 U.S. 943, 91 S.Ct. 242, 27 L.Ed.2d 247 (1970); *Galveston, supra,* 22 Cl.Ct. at 607; *Brookes, supra,* 20 Cl.Ct. at 738; *Aetna Life Ins. Co. v. United States,* 16 Cl.Ct. 364, 371 (1989).

The Code's requirement of detail in setting forth an administrative refund claim must be strictly applied, as it operates as a jurisdictional limitation on courts vested with authority to entertain tax refund suits. *See Ottawa Silica, supra,* 699 F.2d at 1139. In *First National Bank & Trust Co. v. United States,* the district court explained the jurisdictional implications of the variance doctrine:

The grounds on which a claim for refund is based may not be expanded to include new and different theories of recovery once the Internal Revenue Service has acted upon the claim or the time for its action has expired; this limitation is jurisdictional and the Court may not consider any grounds urged in support of refund, even though valid, which were not first presented to the Internal Revenue Service.

*First National Bank & Trust Co. v. United States,* 329 F.Supp. 1147, 1149 (W.D.

Okla.1971) (citing 26 C.F.R. § 301.6402–2), *aff'd,* 462 F.2d 908 (10th Cir.1972). *See also L.E. Myers, supra,* 230 Ct.Cl. at 145, 673 F.2d at 1367 ("the requirement of detail in setting forth [refund] claims is mandatory and ... it must be strictly observed"); *Favell, supra,* 22 Cl.Ct. at 578; *Brookes, supra,* 20 Cl.Ct. at 738 (it is well established that, under the variance doctrine, court lacks jurisdiction over ground for recovery not adequately raised in refund claim); *Rice v. United States,* 8 Cl.Ct. 752, 756 n. 4 (1985) (arguments not raised in a refund claim are outside the court's jurisdiction).

■ In the present case, plaintiffs allege that their original refund claims give the Service adequate notice that the specific nature of the claims involves net income limitation and withholding error. However, the court finds that the administrative claims lack adequate detail to meet the requirements of § 7422 and Treasury Regulation § 301.6402–2(b)(1). The claims merely state that a refund is requested for windfall profit tax overpaid in 1984, due to the net income limitation and withholding error. The claims fail to identify the facts on which they are based. The claims fail to identify the oil producing properties at issue, nor do they provide any of the figures necessary to perform net income limitation calculations. The claims fail to identify the amounts of withholding error. Finally, the claims fail to state the exact amount of taxes allegedly overpaid, or the exact amount of the refunds requested.

■ Nevertheless, plaintiffs allege the Service had sufficient data available to them from which to perform the necessary calculations with regard to the original refund claims. Specifically, plaintiffs point to the availability of the Annual Information Returns (Form 6248) filed annually by first purchasers who pay the windfall profit tax on plaintiffs' behalf.[6] Plaintiffs also cite the availability of the 1984 consolidated corporate income tax return of Nucorp Energy, Inc. (Nucorp), the parent corporation of the four subsidiaries, which was filed on September 16, 1985. Plaintiffs allege Nucorp's corporate tax return contains not only "fundamental gross data from which the net income limitation calculation would flow," but also the income and expense data for all four subsidiaries. However, the "mere availability" of the facts underlying a refund claim is not sufficient, as plaintiffs have the burden to notify the Service of the merits of their claims. *See Brookes, supra,* 20 Cl.Ct. at 738 (citing *Commercial Solvents, supra,* 192 Ct.Cl. at 348–49, 427 F.2d at 755). In *Union Pacific, supra,* the Court of Claims quoted the Supreme Court as follows:

"It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made.... [I]t is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund."

*Union Pacific, supra,* 182 Ct.Cl. at 113, 389 F.2d at 445 (quoting *Angelus Milling Co. v. Commissioner,* 325 U.S. 293, 297–99, 65 S.Ct. 1162, 1164–65, 89 L.Ed. 1619 (1945)); *see also Disabled American Veterans v. United States,* 227 Ct.Cl. 474, 476, 650 F.2d 1178, 1179 (1981).[7]

---

**6.** At oral argument, plaintiffs argued that the Service had copies of Form 6248 (information return) sent to them by first purchasers from which the Service could determine plaintiffs' refund claims. Plaintiffs compared Form 6248 to Form 1099, on which financial institutions report to the Service interest income earned by taxpayers. If plaintiffs' view were carried to an extreme, taxpayers would not have to report interest income on their tax returns simply because the Service receives such information, ostensibly by computer, from the financial institutions.

**7.** The failure of the four subsidiaries to attach Form 6248 (information return) to their original refund claims violates one of the regulations applicable to refund claims for windfall profit taxes withheld. The regulation requires that producers of crude oil, such as the four subsidiaries, must attach Form 6248 to their refund claims. Treas.Reg. § 51.6402–1(c)(2). Therefore, the Service was justified in rejecting their original refund claims for insufficient information. In fact, NEI and CPI recognized as much when they amended their administrative claims

In the present case, the four subsidiaries clearly recognized the inadequacy of their original refund claims when they included the assurance that "[a]dditional information will be sent shortly." Moreover, when NEI and CPI amended their original refund claims, they included extensive data to support the net income limitation calculations, and copies of information returns from first purchasers. In addition, they informed the Service as to the exact amount of windfall profit tax overpaid, and the exact amount of refund claimed. This supplemental information provided by NEI and CPI tends to contradict plaintiffs' assertion that the Service had all the data it needed to assess the original refund claims.

■■■ Finally, plaintiffs argue that the Service has, since the institution of the windfall profit tax, in 1980, consistently allowed plaintiffs' windfall profit tax refund claims. However, a refund claim for one tax year does not constitute a refund claim for a different tax year, even if the underlying legal and factual bases are the same in both claims. *Sun Chemical Corp. v. United States*, 218 Ct.Cl. 702, 704 (1978); *Rosengarten v. United States*, 149 Ct.Cl. 287, 293–94, 181 F.Supp. 275, 278–79, *cert. denied*, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960). Plaintiffs argue that this past course of conduct adequately apprised the Service as to the basis of plaintiffs' windfall profit tax refund claims for the 1984 taxable year. Plaintiffs attack defendant's reliance on cases such as *L.E. Myers v. United States*, 230 Ct.Cl. 142, 673 F.2d 1366 (1982), and *Stoller v. United States*, 444 F.2d 1391 (5th Cir.1971), in which the courts explain that the requirement of detail in setting forth refund claims in the Code and regulations is to prevent the Service from having to guess at the basis for a refund claim. Plaintiffs argue that, in contrast to these cases, plaintiffs' original refund claims are not "bare demands for

refund of the entire tax." However, as discussed above, the original refund claims were not sufficiently detailed to satisfy the requirements of the Code and the regulations. The claims are little more than "bare demands" for refund of the windfall profit tax. A bare demand that a taxpayer wants his entire tax refunded is insufficient to comply with § 7422 and Treasury Regulation § 301.6402–2(b)(1). *L.E. Myers, supra*, 230 Ct.Cl. at 146, 148, 673 F.2d at 1368. A refund claim does not comply with § 7422 when it gives no notice of the amount or nature of the claim for which suit is brought, and refers to no facts upon which the claim may be founded. *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 377–78, 75 L.Ed. 1025 (1931). Moreover, plaintiffs do not allege that, in those prior years in which they received refunds for windfall profit tax claims, the Service allowed plaintiffs to file bare "protective" refund claims devoid of factual support such as those presently in dispute.[8]

■■■ Unfortunately for plaintiffs, they filed their original refund claims on September 15, 1988, one day before the expiration of the three-year limitations period for filing refund claims. 26 U.S.C. § 6511(a). At oral argument, plaintiffs explained that their reason for filing on the last day was due to changes in corporate management in conjunction with a corporate merger. A defective refund claim may be amended after filing to specify the grounds of the claim at any time before the Service disallows the original claim, even if the amendment occurs after the expiration of the limitations period. *United States v. Kales*, 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941); *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 71, 53 S.Ct. 278, 281–82, 77 L.Ed. 619 (1933); *Allstate Ins. Co. v. United States*, 213 Ct.Cl.

by including, among other things, copies of the 24 information returns filed with respect to NEI, and the 12 information returns filed with respect to CPI, pursuant to Treas.Reg. § 51.6402–1(c)(2).

**8.** At oral argument, plaintiffs admitted that their original refund claims for the taxable year 1984

were "thin" compared with their refund claims filed in prior years for which plaintiffs received refunds of overpaid windfall profit taxes. Plaintiffs admitted that the refund claims filed in years prior to the 1984 taxable year were "much more detailed."

96, 104, 550 F.2d 629, 633 (1977); *Arnold, supra,* 19 Cl.Ct. at 526. In this case, however, the Service disallowed the refund claims of NEC and CRI on November 1, 1988, about six weeks after they were filed. Plaintiffs made no attempt to amend or supplement the refund claims of NEC and CRI after receiving the notices of disallowance, which was due to plaintiffs' recognition of the general rule that defective refund claims cannot be amended after disallowance of the claims. Since the defective refund claims of NEC and CRI were not properly amended before they were disallowed, no valid refund claims were ever presented to the Service by these two entities. Therefore, plaintiffs have failed to state a cause of action with regard to the refund claims of NEC and CRI filed in this court, and the court lacks jurisdiction to entertain them.

With regard to the refund claims of NEI and CPI, defendant concedes that, even if the original refund claims were defective for lack of sufficient detail, the original refund claims were properly amended in December of 1988, before plaintiffs received any notice of disallowance with regard to the refund claims of NEI and CPI. The general rule, stated above, is that an informal refund claim, if timely filed, may be perfected by filing an amended claim even after the statute of limitations has expired. *See United States v. Andrews,* 302 U.S. 517, 524, 58 S.Ct. 315, 319, 82 L.Ed. 398 (1938); *Memphis Cotton Oil Co., supra,* 288 U.S. at 69, 71, 53 S.Ct. at 281, 281–82; *First National Bank of Montgomery v. United States,* 150 Ct.Cl. 798, 803, 280 F.2d 818, 821 (1960). Accepting plaintiffs' factual allegations as true for the purpose of the pending motion, NEI and CPI properly amended their administrative refund claims before the Service disallowed them. Therefore, the refund claims of NEI and CPI filed in this court are not subject to dismissal at this time for

lack of sufficient information in their administrative claims.

## CONCLUSION

For the foregoing reasons, the court grants defendant's motion to dismiss counts 3 and 4 of plaintiffs' complaint for failure to state a claim upon which relief can be granted. A judgment dismissing counts 3 and 4 of plaintiffs' complaint will be rendered at the time disposition is made of counts 1 and 2.[9] The parties are directed to inform the court within sixty (60) days of the date of this opinion, or by July 9, 1991, of their intentions regarding disposition of counts 1 and 2 of the complaint. The court notes that defendant has not yet filed an answer to plaintiffs' complaint. Accordingly, defendant is to file its answer within thirty (30) days of the date of this opinion, or by June 10, 1991.

---

**9.** Defendant indicated at oral argument that it was not pursuing, at this stage of litigation, the jurisdictional aspects of counts 1 and 2, because defendant has accepted plaintiffs' factual allegations as true for the purpose of defendant's motion to dismiss. Defendant reserves the right, however, to raise jurisdictional questions with respect to counts 1 and 2 if subsequent discovery reveals that the facts relative to counts 1 and 2 are not as plaintiffs have represented them to be.